# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TERESA ELWARD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 9882 |
| ELECTROLUX HOME PRODUCTS, INC., | ) ) | Judge John Z. Lee |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Illinois consumers bought dishwashers designed and manufactured by Electrolux that unexpectedly overheated, causing fires and flooding. Teresa Elward, on behalf of herself and others similarly situated, has sued Electrolux pursuant to Illinois law for breach of implied warranty, strict liability, negligence, fraud, and statutes relating to consumer fraud and deceptive practices. Electrolux has moved to dismiss the First Amended Complaint for failure to state a claim and for failure to plead the fraud claims with particularity. For the reasons provided below, the Court grants in part and denies in part the motion.

## Facts[1]

Electrolux is the world's second-largest appliance maker by units sold. 1st Am. Compl. ¶ 11. Electrolux designs and manufactures dishwashers and sells them under its own brand name, as well as other brand names, such as Frigidaire. *Id.* ¶¶ 11–13.

Elward alleges that she and other consumers purchased Electrolux dishwashers through Electrolux's agents. *Id.* ¶ 55. Further, she alleges that Electrolux had direct communications

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

with her and other putative class members via advertisements, the internet, warranty forms, registration cards, and other documents. *Id.* According to Elward, based on the direct dealings of customers with Electrolux and its agents, Electrolux was aware that Elward and other Illinois consumers required dishwashers that were safe to use in their homes and that would last as long as dishwashers typically do, which is around nine to thirteen years. *Id.* ¶ 29.

Elward asserts that Electrolux dishwashers are defective because the electrical system overheats, causing its electrical components to catch on fire and melt the tub that contains the water. *Id.* ¶ 16. Electrolux began receiving complaints about its dishwashers catching on fire in 2007. *Id.* ¶¶ 21, 24 (citing examples of fires). Fires occurred even when a dishwasher was not operating. *Id.* ¶ 21. According to examples cited in the complaint, the length of ownership before the dishwashers caught fire ranged from nine months to five years. *Id.* The resulting property damage consisted of smoke damage, flooding, as well as the loss of a consumer's house and all of her possessions. *Id.* Due to its concerns that its dishwashers were spontaneously igniting, Electrolux recalled several models of its dishwashers in the United Kingdom and Australia, but to this day, Electrolux has not issued a similar recall in the United States. *Id.* ¶ 22.

Even after customers complained to Electrolux that its dishwashers posed serious safety risks, Electrolux intentionally concealed those risks and continued to manufacture and sell the dishwashers at issue. *Id.* ¶¶ 22, 116, 134, 148–51. Furthermore, Electrolux did not warn owners that they should replace their dishwashers to avoid those risks. *Id.* ¶ 134. To add insult to injury, Elward alleges, when class members called Electrolux to make warranty claims, Electrolux routinely charged them a fee to inspect their dishwashers, knowing that the dishwasher could not be repaired and that Electrolux would not be offering a replacement. *Id.* ¶ 154.

Based on these facts, Elward and the putative class assert the following claims: (1) breach of implied warranty of merchantability (Count I); (2) strict liability based on design defect (Count II); (3) strict liability based on failure to warn (Count III); (4) negligence (Count IV); (5) negligent failure to warn (Count V); (6) injunctive and declaratory relief (Count VI); (7) unjust enrichment (Count VII); (8) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VIII); (9) violation of the Illinois Uniform Deceptive Trade Practices Act (Count IX); and (10) fraudulent concealment (Count X).

## Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081; *see* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A complaint, however, must also allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district

court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Allegations of fraud must be pleaded in conformance to federal pleading standards specified in Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1994). This requirement ensures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill.1990).

## Analysis

### I. Breach of Implied Warranty of Merchantability

Electrolux first asserts that the breach of implied warranty claim (Count I) for economic damages must be dismissed due to lack of vertical privity. Elward concedes that vertical privity is lacking, *see* 1st Am. Compl. ¶ 32, but she argues that she has plausibly alleged that two exceptions to the privity requirement apply.[2]

A claim for breach of implied warranty of merchantability is governed by the Uniform Commercial Code, 810 Ill. Comp. Stat. 5/2-314. As a general rule, unless personal injury is alleged, "implied warranties give a buyer of goods a potential cause of action only against his

---

[2] Elward also argues that she may move to amend the complaint to include a claim under the Magnuson-Moss Act, 15 U.S.C. § 2308. Because Elward has not yet so moved, the Court will not address any argument regarding such a claim.

immediate seller." *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988); *see Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989). .

Illinois recognizes various exceptions to the privity requirement, however. *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980). Given "the fact-intensive nature" of the privity inquiry, *see In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993), a determination as to whether privity exists is often "not appropriate at the motion-to-dismiss stage," *Apex Mgmt. Corp. v. WSR Corp.*, 225 B.R. 640, 646 (N.D. Ill. 1998).

Elward first argues that the allegations of the complaint satisfy the "direct relationship" exception, which applies when there are direct dealings between the manufacturer and the remote customer. *See id.* In *Abco Metals Corp. v. J.W. Imports Co., Inc.*, a manufacturer sold a wire chopping machine to its distributor, who sold it to an equipment leasing company, who then leased it to the plaintiff, the remote customer. 560 F. Supp. 125, 127 (N.D. Ill. 1982). The plaintiff alleged that the manufacturer's agent had met with plaintiff to discuss the machine and had promised that the machine would meet the plaintiff's requirements. *Id.* at 128. When the machine did not operate as expected, the plaintiff notified one of manufacturer's agents, but all attempts to fix the machine failed. *Id.* Because the plaintiff alleged that it had direct dealings with the manufacturer's agents, the *Abco* court held that the complaint sufficiently pleaded that the direct relationship exception and denied the manufacturer's motion to dismiss for lack of privity. *Id.*

In *In re Rust-Oleum Restore Marketing, Sales Practices & Products Liability Litigation*, remote customers alleged that they had relied on the manufacturer's misrepresentations in brochures and advertisements prior to purchasing a deck resurfacing product and that they had direct dealings with the manufacturer's agents. 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016).

5

The *Rust-Oleum* court held that such allegations were sufficient to allege that the direct relationship exception to the privity requirement applied. *Id.* (citing *TRW, Inc. v. Dart Indus., Inc.*, No. 84 C 3049, 1986 WL 3327, at *10 (N.D. Ill. Mar. 7, 1986) (applying Illinois law)).

As in *Abco* and *In re Rust-Oleum*, Elward alleges that she and other remote customers had a direct relationship with Electrolux dishwasher retailers, who are Electrolux's agents. As in *In re Rust-Oleum*, Elward also alleges that she, and others like her, had direct dealings with Electrolux via its advertisements, warranty forms, and registration cards. 1st Am. Compl. ¶ 55. Based on these direct dealings, Elward and other remote customers claim that they expected their dishwashers to last between nine and thirteen years, rather than becoming completely inoperable within a short period of time. *Id.* ¶¶ 15, 21, 25, 32–36. To this end, the complaint provides specific examples showing that the dishwashers lasted only nine months to two years before they overheated, caught fire, and caused flooding. *Id.* Given the fact-intensive nature of the privity inquiry, the Court holds that these allegations state a plausible claim that Electrolux is liable for breach of implied warranty under the direct relationship exception to the privity requirement.

Elward also argues that she has alleged sufficient facts to assert Electrolux's liability under the third-party beneficiary exception to privity, which applies "where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980); *see also Rhodes Pharmacal Co. v. Cont'l Can Co.*, 219 N.E.2d 726, 732 (Ill. App. Ct. 1966). In *Frank's Maintenance*, the seller ordered seamless steel tubing from the manufacturer and directed the manufacturer to send the tubes directly to the remote customer to be used as motorcycle front fork tubes bearing the full front weight of motorcycles. 408 N.E.2d at 405. After discovering that the tubing was

pitted, corroded, cracked, and welded, the remote customer sued the manufacturer. *Id.* at 405–06. The court held that the third-party beneficiary exception applied because the steel tubing manufacturer knew the identity of the remote customer, knew the customer's particular requirements and purpose for the tubing, and then delivered the goods to customer specifically to meet those requirements. *Id.* at 412.

Likewise, in *R&L Grain Co. v. Chicago Eastern Corp.*, the manufacturer was aware of the remote customer's requirement that the grain bin safely store grain during the most severe Wisconsin winters, and the manufacturer delivered the grain bin to meet that requirement. 531 F. Supp. 201, 203–04, 208 (N.D. Ill. 1981). The court held that the alleged facts indicated that the grain company was the third-party beneficiary of the contract between the seller and the manufacturer. *Id.* at 208.

Similar to the plaintiffs in *Frank's Maintenance* and *R&L*, Elward alleges that Electrolux was aware of remote customers' requirement that their dishwashers function without overheating, catching fire, and causing floods. 1st Am. Compl. ¶¶ 15–21, 55. Elward avers that Electrolux delivered dishwashers in order to satisfy that requirement. *Id.* ¶ 51. In this way, Elward alleges that remote customers are third-party beneficiaries of contracts between Electrolux and their dealer-agents. *Id.* ¶ 55. Again, given that the privity inquiry is fact-intensive, the Court holds that these allegations are sufficient to survive a motion to dismiss.

## II. Negligence and Strict Liability

Next, Electrolux argues that the *Moorman* doctrine, also known as the economic-loss doctrine, bars Elward's negligence and strict liability claims (Counts II through V). In *Moorman Manufacturing Co. v. National Tank Co.*, the Illinois Supreme Court held that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous

7

occurrence," whereas, the "remedy for economic loss . . . lies in contract." 435 N.E.2d 443, 449 (Ill. 1982). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property*' as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* (emphasis added) (citation omitted). "Simply put, a product that damages only itself cannot be the subject of a suit for damages." *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill. App. Ct. 2002). *Cf. Wausau Underwriters Ins. v. United Plastics Grp.*, 512 F.3d 953, 957 (7th Cir. 2008) ("If the defect that gives rise to liability imposes costs, such as repair costs or loss of customer goodwill, on the purchaser (Microtherm) without physically damaging any of his property, the seller of the product (UPG) is not liable for those costs unless he has agreed by contract to indemnify them.").

Illinois recognizes an exception to the economic-loss rule where "the plaintiff sustains damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 48 (Ill. 1997). "For damages to be recoverable in tort, the sudden, dangerous, or calamitous occurrence must still result in personal injury or property damage. Absent injury to a plaintiff's person or property, a claim presents an economic loss not recoverable in tort." *In re Chi. Flood Litig.*, 680 N.E.2d 265, 275–76 (Ill. 1997). In establishing this exception, the Illinois Supreme Court "had in mind fires, explosions, or other calamitous occurrences due to the failure of a product and the resulting risk of harm to persons or property." *Loman v. Freeman*, 890 N.E.2d 446, 452 (Ill. 2008).

In *Schuster Equipment Co. Inc. v. Design Electrical Services, Inc.*, the Illinois Appellate Court reversed the trial court's dismissal of a complaint based on the *Moorman* doctrine, where the plaintiff sued defendant for negligently manufacturing and installing a defective electric line that resulted in a fire inside plaintiff's personal computer. 554 N.E.2d 1097, 1098–99 (Ill. App. Ct. 1990). Because the complaint alleged that the fire resulting from the defective product destroyed his computer, the *Schuster* court held that the plaintiff had sufficiently alleged that the defective product had damaged "other property" and that the destruction was the result of a sudden and dangerous occurrence. *Id.*

In *Sovereign Chemical & Petroleum Products, Inc. v. Ameropan Oil Corp.*, the plaintiff sued the defendant for negligently providing the incorrect grade of fuel oil for its boiler, which damaged the boiler, which then failed to heat plaintiff's facility. 148 F.R.D. 208, 209 (N.D. Ill. 1992). The facility's pipes froze and burst causing water damage to the plaintiff's inventory. *Id.* The court held that the *Moorman* doctrine was no bar because the sudden water leak from the ruptured pipes had destroyed property other than the product itself. *Id.* at 213.

Here, Elward alleges that the dishwashers of putative class members overheated, caught fire, and caused property damage. *See* 1st Am. Compl. ¶ 2 (depicting photo of dishwasher that had caught fire and damaged house); *id.* ¶ 17 (describing kitchen filled with smoke emitted from burning dishwasher); *id.* ¶ 21 (stating that dishwasher caught fire and burned house down); *id.* ¶ 23 (Electrolux recalled dishwashers in U.K. citing potential risk of fire); *id.* ¶ 26 (dishwashers ignited and caught fire). As in *Schuster* and *Sovereign*, Elward seeks damages for the loss of property other than the defective product that occurred in a catastrophic way. Accordingly, the Court finds that Elward has sufficiently alleged that the *Moorman* exception applies.[3] *See*

---

[3] The Court finds misplaced Electrolux's reliance on *Duncan Place Owners Association v. Danze, Inc.*, No. 15 C 1662, 2016 WL 3551665, at *14–15 (N.D. Ill. June 30, 2016), a case which merely

9

*Loman*, 890 N.E.2d at 452. Electrolux's motion to dismiss Counts II through V based on the economic-loss doctrine is denied.

### III. Declaratory Judgment Act and Injunctions

In Count VI, Elward seeks a declaration that the dishwashers have a common defect in their design or manufacture that poses a serious safety risk to consumers and the public. She also asks for injunctive relief that require Electrolux to issue corrective actions, such as a nationwide recall of the dishwashers.

As an initial matter, Electrolux argues that Count VI must be dismissed because requests for declaratory judgment and injunctions are not independent causes of action. "It is well established that the Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief." *Morris v. Mfrs. Life Ins. Co.*, No. EV 95-142-C H/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997). "Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Similarly, "[a]n injunction is a type of remedy, as distinct from an underlying claim for relief." *Onyango v. Downtown Entm't, LLC*, 525 Fed. Appx. 458, 460 (7th Cir. 2013). Accordingly, the Court grants Electrolux's motion to dismiss Count VI.

Not only does Electrolux seek dismissal of Count VI, it also asks the Court to strike any requests for a declaratory judgment or injunction as a form of relief. *See* 1st Am. Compl., Prayer for Relief, ¶¶ A–H (seeking declaratory and injunctive relief). However, a determination as to whether Elward and the putative class members will ultimately prevail on any substantive claims

---

involved leaky faucets with no sudden calamitous, precipitating event. Furthermore, another case upon which Electrolux relies, *Harleysville Lake States Insurance Co. v. Superior One Electric, Inc.*, No. 14 C 747, 2015 WL9268210, at *3–4 (N.D. Ill. Dec. 21, 2015), is unpersuasive because it neither acknowledges the Illinois Supreme Court's statement in *Loman* nor analyzes any case law applying the sudden and dangerous occurrence exception.

and whether a declaration and injunction will provide an appropriate remedy must await another day. *See In re Rust-Oleum*, 155 F. Supp. 3d at 784 (stating that "the proper inclusion and scope of injunctive relief for a class action is more appropriately addressed in regard to class certification"); *see* Fed. R. Civ. P. 23(b)(2) ("A class action may be maintained if Rule 23(a) is satisfied and if: ... (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). The Court therefore declines Electrolux's invitation at this nascent stage of the litigation to determine whether Elward and putative class members are entitled to declaratory or injunctive relief.[4]

## IV. Fraud

According to Electrolux, the fraud claims must be dismissed under Rule 9(b) for failure to plead with particularity (Count VIII through X). The Court disagrees. Elward has sufficiently addressed the "who, what, when, where and how" standard. *See DiLeo*, 901 F.2d at 626.

Elward alleges the "who": Electrolux and its Frigidaire and Electrolux dishwashers. 1st Am. Compl. ¶¶ 1–4. 113. She also provides details of the "what" and "how" of the fraud described in over twelve pages of allegations: Electrolux knew of the alleged defect and the serious safety risks it posed, *id.* ¶¶ 18–17, 113, and yet concealed the defect and risks, *id.* ¶¶ 22, 28–31, 114–121. Elward also alleges that the fraud was in full swing by 2007, *id.* ¶ 21. Because the well-pleaded complaint describes the who, what, when, where and how of the fraud in painstaking detail, the Court denies the motion to dismiss pursuant to Rule 9(b).

---

[4] For the same reason, despite Electrolux's urging, the Court declines to dismiss Elward's claim under the Illinois Uniform Deceptive Trade Practices Act (Count IX) on the ground that Elward and any putative class or subclass will not be entitled to injunctive relief.

### V. Unjust Enrichment

Electrolux moves to dismiss Count VII because unjust enrichment is not a cause of action and, assuming all other counts are dismissed, cannot stand alone. "Unjust enrichment is not an independent cause of action. Rather it is a remedy for unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law." *Chi. Title Ins. Co. v. Teachers' Ret. Sys. of State of Ill.*, 7 N.E.3d 19, 24 (Ill. App. Ct. 2014) (citations and quotations omitted). Because Elward has treated her claim for unjust enrichment as a stand-alone cause of action, the Court grants Electrolux's motion to dismiss Count VII. However, the Court will construe the First Amended Complaint as seeking the remedies related to unjust enrichment as if they had been included in the prayer for relief.[5]

### Conclusion

For the reasons provided herein, the Court grants in part and denies in part Electrolux's motion to dismiss the First Amended Complaint [66]. The Court grants the motion to dismiss Counts VI and VII insofar as those counts do not state free-standing causes of action and denies the motion in all other respects. Electrolux's motion to dismiss filed prior to the filing of the First Amended Complaint is stricken as moot [36].

**SO ORDERED**  **ENTER: 10/4/16**

_____
**JOHN Z. LEE**
**United States District Judge**

---

[5] To clarify the forms of relief requested, Elward should omit Counts VI and VII in any future amendment of the complaint and include in the prayer for relief the forms of relief requested in those counts.