**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TERESA ELWARD, DENNIS KEESLER, LEASA BRITTENHAM, KATHY BECK AND NATHANIEL BECK, ANGELIA EAST, SARAH LaVERGNE, TONY AND LAUREN FITZGERALD, GREGORY GRAY, BETHANY WILLIAMS, JOHN McLAUGHLIN, STACY CISCO, and WILLIAM FERGUSON AND CHERYL FERGUSON, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-09882<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | |

**CONSOLIDATED AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PARTIES ............................................................................................................................. 2

JURISDICTION AND VENUE ......................................................................................... 3

FACTUAL ALLEGATIONS .............................................................................................. 4

    A.   The Defects at issue in the subject Dishwashers are material and present a safety hazard.. 6

    B.   Electrolux had actual knowledge of the Dishwashers' defects through warranty claims, complaints, recalls in other countries, and other pending lawsuits. ................................... 9

    C.   The Defects pose real and actual safety risks to consumers and their property. ............... 15

    D.   Electrolux failed to disclose and otherwise concealed the material safety risk form its consumers. ...................................................................................................................... 16

PLAINTIFFS' INDIVIDUAL FACTS .............................................................................. 17

    A.   Plaintiff Teresa Elward .................................................................................................. 17

    B.   Plaintiff Dennis Keesler ................................................................................................. 18

    C.   Plaintiff Leasa Brittenham .............................................................................................. 20

    D.   Plaintiffs Nathaniel and Kathy Beck .............................................................................. 22

    E.   Plaintiffs Angelia East and Sara LaVergne ..................................................................... 22

    F.   Plaintiffs Tony and Lauren Fitzgerald ............................................................................. 23

    G.   Plaintiff Gregory Gray .................................................................................................... 24

    H.   Plaintiff Bethany Williams .............................................................................................. 25

    I.   Plaintiff John McLaughlin ............................................................................................... 26

    J.   Plaintiff Stacy Cisco ....................................................................................................... 27

    K.   Plaintiffs William Ferguson and Cheryl Ferguson ......................................................... 28

CLASS ACTION ALLEGATIONS ........................................................... 29

TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION ............................................ 34

FIRST CAUSE OF ACTION

    BREACH OF IMPLIED WARRANTY ................................................ 36

SECOND CAUSE OF ACTION

    STRICT LIABILITY - DESIGN DEFECT ......................................... 38

THIRD CAUSE OF ACTION

    STRICT LIABILITY – FAILURE TO WARN ...................................... 39

FOURTH CAUSE OF ACTION

    NEGLIGENCE ..................................................................... 40

FIFTH CAUSE OF ACTION

    NEGLIGENT FAILURE TO WARN ............................................... 43

SIXTH CAUSE OF ACTION

    VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE

    PRACTICES ACT ................................................................. 44

SEVENTH CAUSE OF ACTION

    VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT .. 47

EIGHTH CAUSE OF ACTION

    VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES

    AND CONSUMER PROTECTION LAW ........................................... 50

NINTH CAUSE OF ACTION

    VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ............ 53

TENTH CAUSE OF ACTION

    VIOLATION OF THE WASHINGTON PRODUCT LIABILITY ACT .............................. 56

ELEVENTH CAUSE OF ACTION

    VIOLATION OF THE WASHINGTON PRODUCT LIABILITY ACT .............................. 58

TWELFTH CAUSE OF ACTION

    INDIANA PRODUCT LIABILITY ACT - DESIGN DEFECT ........................................... 59

THIRTEENTH CAUSE OF ACTION

    INDIANA PRODUCT LIABILITY ACT – FAILURE TO WARN..................................... 61

FOURTEENTH CAUSE OF ACTION

    VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT ..................... 62

FIFTEENTH CAUSE OF ACTION

    CALIFORNIA UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS
    PRACTICES ................................................................................................................... 66

SIXTEENTH CAUSE OF ACTION

    VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ..................................... 68

SEVENTEENTH CAUSE OF ACTION

    BREACH OF IMPLIED WARRANTIES
    UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT.................................. 69

EIGHTEENTH CAUSE OF ACTION

    FRAUDULENT CONCEALMENT...................................................................................... 71

NINTEENTH CAUSE OF ACTION

    LOUISIANA PRODUCTS LIABILITY ACT – BREACH OF EXPRESS
    WARRANTIES ................................................................................................................. 72

TWENTIETH CAUSE OF ACTION

    LOUISIANA PRODUCTS LIABILITY ACT – FAILURE TO WARN ............................... 74

TWENTY-FIRST CAUSE OF ACTION

    LOUISIANA PRODUCTS LIABILITY ACT – DESIGN DEFECT ................................... 76

JURY DEMAND ...................................................................................................................... 77

PRAYER FOR RELIEF ........................................................................................................... 77

## INTRODUCTION

1.      Plaintiffs Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East and Sarah LaVergne, Tony and Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William and Cheryl Ferguson ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Electrolux Home Products, Inc. ("Electrolux").  The following allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

2.      Plaintiffs represent a proposed class of thousands of consumers who owned and used residential dishwashers designed and manufactured by Electrolux, and sold under the Frigidaire or Electrolux brand names. These dishwashers are dangerously defective in that their electrical systems overheat and catch fire, burning holes through the dishwasher, causing flooding, or causing the entire dishwasher and surrounding area to ignite and burn.

3.      The magnitude of the health and safety hazard the defect poses is exemplified by this picture of the Frigidaire dishwasher of Plaintiff Leasa Brittenham, which caused significant damage to her home, personal property, and her family's pets' health as a result of the smoke and fire:



1

4.      Other consumers' experiences are equally alarming and illustrate the degree to which these dishwashers pose an unreasonable safety hazard.

5.      Electrolux has known of this dangerous defect for years; however, to date it has failed to recall or otherwise inform the public that its dishwashers are defective and are serious safety risk.

6.      Electrolux's conduct violates well-established contract, tort, and consumer protection laws of Illinois and various other states. Plaintiffs bring this suit on behalf of themselves and similarly situated consumers, seeking damages and appropriate equitable relief, including an order enjoining Electrolux from selling these dishwashers without disclosing their defect to its consumers.

## PARTIES

7.      Plaintiff Teresa Elward is a resident of Chicago, Illinois, and a citizen of the State of Illinois.

8.      Plaintiff Dennis Keesler is a resident of Cresco, Pennsylvania, and a citizen of the Commonwealth of Pennsylvania.

9.      Plaintiff Leasa Brittenham is a resident of Tacoma, Washington, and a citizen of the State of Washington.

10.     Plaintiffs Kathy Beck and Nathaniel Beck are residents of Oakland City, Indiana, and citizens of the State of Indiana.

11.     Plaintiffs Angelia East and Sarah LaVergne are residents of Starks, Louisiana, and citizens of the State of Louisiana.

12.     Plaintiffs Tony and Lauren Fitzgerald are residents of Hopewell, Virginia, and citizens of the Commonwealth of Virginia.

13.     Plaintiff Gregory Gray is a resident of Canyon Country, California, and a citizen of the State of California.

14.     Plaintiff Bethany Williams is a resident of Lakeside, California, and a citizen of the State of California.

15.     Plaintiff John McLaughlin is a resident of Rancho Cordova, California, and a citizen of the State of California.

16.     Plaintiff Stacy Cisco is a resident of Sidney, Ohio, and a citizen of the State of Ohio.

17.     Plaintiffs William Ferguson and Cheryl Ferguson are residents of Cincinnati, Ohio, and citizens of the State of Ohio.

18.     Defendant Electrolux Home Products, Inc. is a Delaware corporation that maintains its principal place of business at 10200 David Taylor Drive, Charlotte, North Carolina 28262.   Electrolux designs, engineers, tests, and manufactures appliances that it sells through authorized retailers, and intends those appliances be sold to consumers for personal or household use.  As part of the sale to consumers, Electrolux offers a warranty directly to the consumers, and not for the benefit of the authorized retailers.

### JURISDICTION AND VENUE

19.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Electrolux, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

20.     This Court has jurisdiction over Electrolux because it is registered to conduct business in Illinois, has sufficient minimum contacts in Illinois, and otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its products, such that the exercise of jurisdiction by this Court is proper and necessary.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because Electrolux conducts substantial business in this District, and a substantial part of the events giving rise to Plaintiff Elward's claims occurred in this District.

## FACTUAL ALLEGATIONS

22.     Electrolux is the world's second-largest appliance maker by units sold.  It sells under a variety of brand names in the United States, including under its popular Frigidaire brand.

23.     Dishwashers are common household appliances that wash, rinse, and dry kitchenware using a mix of detergent and water.  Typically, dishwashers use a heating element—a wire coil that converts electrical energy passing through it into heat—to heat the wash solution and to dry the dishes.   This heating element is mounted at the bottom of the dishwasher tub and is held in place by metal brackets.   Below are images of heating elements in Frigidaire dishwashers:

 

24.     Owners of the dishwashers that are the subject of this lawsuit control the dishwasher's functions through an electronic control panel located at the front of the dishwasher cabinet.  The control panel is directly connected to the incoming power supply through a junction box located at the bottom of the dishwasher.   The control is the power source for all of the electrical components in the dishwasher, including the heating element, which is connected to the control through a second power line.  When heating water, the electrical draw can be as high as 900 watts in Frigidaire models. An exemplar diagram of elements of a dishwasher appears on the next page.



25.     In addition to these standard items, Electrolux also promotes special features on its dishwashers that actively encourage owners to use their dishwashers when they are asleep or away from home.  For example, many Electrolux models contain a Delay Start option that delays the beginning of the cycle for six or more hours, so that the user can run the dishwasher without being present.

5

26.     Dishwashers, including Electrolux's, are expected to function properly for at least nine to thirteen years.[1]

### A.     The Defects at issue in the subject Dishwashers are material and present a safety hazard.

27.      Despite these advanced features, Electrolux dishwashers are defective because individual components in the electrical system overheat and in some cases, fail catastrophically. This is because of a design defect, manufacturing defect, or defect in the materials used in manufacturing the machines.   When the defective electrical system overheats (or, when the materials simply cannot handle the amount of heat the dishwashers use), it can cause the control board, heating element, or connected wiring to short circuit or catch fire without warning. Overheating, or a defect in the materials used, may also cause the heating element to warp or sag, allowing it to burn through the bottom of dishwasher tub.   Many consumers have reported the element burning a crack or hole in the tub, causing significant flooding when the dishwasher is operating.   This flooding creates its own risk of a short circuit and fire when water comes into contact with exposed electrical components.

28.     Below are consumer complaints (as submitted, uncorrected for grammar or spelling) and corresponding images of damage caused by the defective electrical system in Electrolux dishwashers submitted to the Consumer Product Safety Commission:

> LFBD2409: Dishwasher stopped working and the smell of burning plastic was all over the house. The wires in the junction box under the dishwasher are all charred. The circuit breaker on the main panel tripped as a result. From the photos you can see the damage.
>
> Report No. 20130923-BD2E5-2147451613
> http://www.saferproducts.gov/ViewIncident/1357307 (last visited Oct. 27, 2015).

---

[1] The National Association of Home Builders reported in a 2007 study, conducted with Bank of America Home Equity, that the life expectancy of dishwashers is nine years. The Association of Home Appliance Manufacturers, of which Electrolux is a member, cites a 1996 National Family Opinion, Inc. survey stating that the life expectancy of home dishwashers is thirteen years.

Frigidaire FDB1100RHM: Purchased the Frigidaire dishwasher Model Number: FDB1100RHM in October 2009. On August 5, my wife returned home five hours later and found the dishwasher stuck in cycle. As a result the heat element continued to heat and the poor design resulted in the collapse of the element and it burned two holes in the tub. This created a potential fire hazard if we had been away from the house for an extended period of time

After receiving the response from Frigidaire that offered little solution, I shopped this weekend to find the exact diswasher has had a design change in the heating element. They moved from a large square element to a small, better supported round element. This change would have prevented the collapes of my element.

Frididaire has not accepted any responsibility for the results, have offered little response. I believe that this design problem could creat problems for other owners of the older model. I have photos of the damage and the new model change. I would like to provide to you for your review.

Report No. 20110815-3DF7B-2147476247
http://www.saferproducts.gov/ViewIncident/1196828 (last visited Oct. 27, 2015).


FDBB4365FBV0: The dishwasher had been in use for approx. 60 - 90 minutes and it was on the drying cycle. when the consumer's husband noticed a burning odor in their home. The consumer also noticed the odor and saw that the kitchen began to fill with smoke. The smoke appeared to be emitting from the bottom of the dishwasher, but it was difficult to see, due to the amount of smoke in the kitchen.

Both consumer's saw sparks emitting from the bottom of the dishwasher and when they opened the dishwasher door they saw flames in the bottom of the dishwasher. The husband unplugged the dishwasher from the wall outlet and ran to get the fire extinguisher. The husband sprayed the extinguisher on the flames and he was able to put them out. The inside of the dishwasher is grey, but it was discolored from the fire.

The consumer said that it appeared that the fire started underneath the dishwasher and burned up through the bottom of it, before the husband put it out. The consumer said that the heating coil remained intact. There were some plastic items in the top rack of the dishwasher, but they also were not affected by the fire. The floor of the dishwasher tub melted and had actually been in flames.

(12/26/13) The consumer called the manufacturer and reported the incident to them. She spoke with [REDACTED] and the consumer was given a Complaint # [REDACTED].

The consumer noted that she uses the dishwasher daily most of the time. The dishwasher has never been serviced for any prior reasons.



Report No. 20131227-D3255-1377604
http://www.saferproducts.gov/ViewIncident/1377604 (last visited Oct. 27, 2015).

FDB520RHB2A: The consumer stated that he was using his dishwasher and the heating element melted the plastic causing a leak from a 3" (in length) crack on the left rear corner of the dishwasher. The consumer stated that water leaked underneath the dishwasher and went through the wood floor leaking onto the basement. The consumer stated that there was flood in the basement do to the leak.

The consumer stated that he suffered damages to his wood floor and the basement ceiling. The consumer stated that he also believe that this was a fire hazard because there was a problem with the heating element that it's becoming so hot that may cause a fire.

The consumer stated that no one was injured.

The consumer stated that he contacted the manufacturer; they informed him that there was no recall and they could not provide any assistance.

The consumer stated that he believed that this product should be investigated do to the fire hazard that it poses to consumers.



Report No. 20130531-02B1A-1330960
http://www.saferproducts.gov/ViewIncident/1330960 (last visited Oct. 27, 2015).

**B.      Electrolux had actual knowledge of the Dishwashers' defects through warranty claims, complaints, recalls in other countries, and other pending lawsuits.**

29.      Before placing its dishwashers into the stream of commerce, Electrolux had actual knowledge that they contained a defective electrical system and heating element that cause fires and flooding, and create an unreasonable risk of property damage and personal injury or death.

30.      Electrolux knew of this defect prior to sale because of the variety of early warning systems and statistical analyses that it uses to detect problems before they can affect consumers. Electrolux has a robust quality department that conducts field trials during production and before sale to improve product performance, cost-effectiveness, and productivity. It also actively collects and monitors performance information in a database and works with management to

9

implement quality improvements. Electrolux also has a quality assurance system with which it performs internal audits on its own systems, and external audits on new and existing suppliers. When problems are detected, Electrolux has quality work groups resolve design, manufacturing, and other issues through root cause analyses and corrective actions. The results of these tests and audits would have informed Electrolux prior to sale that its dishwashers were defective.

31.     In addition, Electrolux also conducts a significant amount of after-market testing that would have informed it that its dishwashers had a defective electrical system. Its quality teams monitor warranty statistics and the service call rates in order to detect problems as soon as customers begin to experience them. They also track returned products and parts to investigate product faults in an effort to reduce the warranty rate. Quality engineers also monitor customer complaints from Electrolux's call center and other sources to detect increases in problems. Given that the electrical systems in its dishwashers can fail quite rapidly within the expected useful life of the dishwashers, after-market testing would have also informed Electrolux that the dishwashers were defective.

32.     Electrolux also had actual knowledge of the defect because it received consumer complaints, both directly or indirectly, at least since 2007. For example, a review of complaints submitted to ConsumerAffairs.com at http://www.consumeraffairs.com/homeowners/ frigidaire_dishwashers.html (last visited Oct. 27, 2015) demonstrates that Electrolux dishwashers' electrical system can fail as early as 1-2 years after purchase (spelling and grammar not corrected):

> I bought a Frigidaire Dishwasher and after two years of use, it caught fire. I unloaded the unit and then closed the door and left the room. The next thing I knew, the smoke detector was going off and the kitchen was filled with white smoke. The unit was making a sizzling noise. The scary thing here was that this happened without even turing the unit on. I am glad that I did not leave the house, it could have all been gone!

(Lisa of Sioux City, Iowa – Dec. 7, 2007)

I purchased a Fridgedaire dishwasher in November 2006. On October 2007 it caught fire and burned my house down along with my dog. It was not running a wash at the time. I have been told that it was the control panel that caught fire. I lost my home, my possessions, and my pet of 13 years.
I have lost everything. I had insurance that covered most of the loss, but I have since had to move. I cannot return to my home of 20 years.
(Carla of Azle, Texas – Dec. 28, 2007)

Our frigidaire dishwaher caught on fire tonight. There was a load pop and when we investigated the noise we found smoke pouring out of the door of the dishwasher. It was not even in use when this happened. We were just lucky that we were at home so I could turn off the breaker.

It seems the the timers fail, blow up and catch on fire. This is what seemed to happened with ours. This issue needs to be addressed by frigidiare. We were lucky as we will just be out the price of a new dishwasher. Thank god we were home at the time of the melt down. I will be interested in taking this further if frigidaire does not give do anything about what happened with our dishwasher. They need to address this issue. Dishwasher: Professional Series Age: Less than 5 years Loud pop an smoke poured from the door. The dishwasher was not in use when it caught on fire. Circiut breaker did not blow, it was a 15 amp breaker.
We had no damage but we were home to turn off the breaker to the dishwasher.
(James of Fort Worth, Texas – July 21, 2008)

Frigidaire Gallery dishwasher caught on fire! We normally do not think anything of starting the dishwasher before we leave the house or before we go to bed. Never again! Luckily, we were home, awake and in the kitchen when there was a loud pop followed by smoke and flames in the control panel. It took a few blasts from our fire extinguisher into the vent panel on the door to put out the flames. I am sure that had we not been home, our house would have burned down and our three wonderful dogs would have perished. Shame on Frigidaire for building a product like this!
(Michael of Canton, Ohio – October 11, 2008)

I purchased a Frigidaire dishwasher on 01/26/2008 and it began leaking water on 10/17/08. I called for warranty repair and a serviceman came out on 10/21/08. He stated that there was a defect in the heating element that had melted the tub and that I would be getting a new dishwasher. When the serviceman (A&E Factory Service) called into Frigidaire for Frefu, he was informed that they now replace the heating element and tub and do not replace the whole dishwasher with a new unit. I was fine with that and was told that the parts would be in by 10/24/08 and delivered directly from Frigidaire to my property. After not receiving any parts or calls, I contacted A&E regarding the parts and they showed that the parts were on backorder with Frigidaire. I then contacted Frigidaire on the

same day and was told to expect the parts on or before 10/31/08. I am still awaiting the parts. This is ridiculous!!

This dishwasher is in a condominium owned by us and we may loose our tenant over this.
(Lisa of Rockwall, Texas – Nov. 13, 2008)

I purchased a Frigidare Gallery series dishwasher in 2005.It has been sitting in my kitchen empty and unplugged for a year now.The heating element in this diswasher never shut off. It just sat there geting hotter and hotter.Many of the interior parts melted down and the smell, is what drew my attention to the problem. I am fortunate that I was home at the time or I am certian that it would of eventually caught fire. I contacted the manufacturer to determine if there had been a recall on this dishwasher and was told that they had no record of this happening before.
(Cheryl of Valley Springs, California – Dec. 16, 2008)

Frigidaire plastic dishwasher tub caught fire! My dishwasher is 10 years old. White was the manufacturer then, but my in-laws have a Kenmore that's less than 5 years with the same interior parts. I learned how to maintain it myself - unclog the sprayer arms and make sure the heating element is in the clips and not warping or touching the plastic tub. The dishwasher has worked well enough for its lifetime. I started a wash cycle one night before going to bed. I woke to my alarm clock the next morning and heard a hissing noise. I found a flood in my kitchen! The water feed line to my refrigerator sprung a leak behind the dishwasher. There was a funny burnt smell in the air, which I figured the dishwasher motor may have suffered water damage while running.

After cleaning up the mess, I reached for a clean bowl in the dishwasher. It finished its cycle, as expected, and the clean light was on. I found everything inside it was covered with soot and there is a hole 4 inches wide and nearly a foot high burned through the back of the tub! The heater tube broke apart. The heating element wire expanded out of the tube and ignited the plastic tub! The burning plastic dripped to the floor, passing the plastic water feed line and burning a hole in it which apparently extinguished the fire. The dishwasher continued on until its cycle completed. The dishwasher is properly connected on its own 15amp circuit. A GFCI is not required.
(Robert of Sloatsburg, NY – April 17, 2009)

About 5 years ago, our dishwasher caught fire. The warranty was over but as soon as we called the company, no further questions were asked and they shipped a new Frigidaire dishwasher the very next day. They did not want to old one, see it or have me send a purchase receipt. I told my wife, this is suspicious and they are probably getting many serious calls and do not want government-imposed recall problems from complaints.

Now 5 years later, we hear of this recall during this past summer on the same problem. Do not use the heating elements to dry your dishes! What is happening is the heating element becomes extremely warped, two sides warp upwards and the other two sides warp downward, and burn into the plastic tub and catch fire. These are cheap elements without amperage load protection.

Marketing engineering is what I call it - build cheap so that we have to buy a new one every 7 years. Obviously, there is no money for appliances that last 20 to 30 years as was the previous appliances I had. Corporate America wants bigger profit margins and more sales. Filing legal action is what is needed with media coverage for free publicity seems like the only avenue to go these days.
(Bob of Ottawa, Ontario – October 25, 2010)

We awake this morning to a smoke odor in our home. The dishwasher was reading ERR. When we opened the dishwasher, it was evident that the heating element did not shut off, which caused a small fire in the dishwasher. It melted the bottom sprayer and dishwasher safe plastics on the bottom shelf. The fire was hot enough to melt an entire water bottle, which has been washed this way over hundred times.
(Lisa of Southwick, MA – September 23, 2011)

33.     Electrolux recalled dishwashers outside of the United States because of concerns about the dishwashers catching on fire. Facing reports of similar issues with its dishwashers in Australia, Electrolux recalled several models in 2007 in conjunction with the Australian Competition and Consumer Commission. It explained that a "wire connector within the appliance may, in extreme cases, overheat and cause a small self-contained fire or melting of plastic components within the control panel." https://www.recalls.gov.au/content/index.phtml/itemId/953307 (last visited Oct. 27, 2015). That same year, Electrolux also recalled dishwashers in the United Kingdom citing a "potential risk of fire" from a purchased connector component. United Kingdom Association of Fire Investigators, http://www.uk-afi.org/product-recall/2007-06-15/aeg-electrolux-and-zanussi-electrolux-dishwashers (last visited Oct. 27, 2015). In Australia, Electrolux conducted a follow-up recall in 2013 stating that "an electrical component used in the previous recall may overheat." https://www.recalls.gov.au/content/index.phtml/itemId/1050863 (last visited Oct. 27, 2015).

Despite these recalls abroad, upon information and belief, Electrolux has not conducted a similar recall for dishwasher in the United States.

34.     Electrolux was also aware at the time of sale that its competitors suffered similar problems with components overheating, resulting in fires.  Unlike Electrolux however, those manufacturers instituted recalls of millions of dishwashers when faced with problems.  For example, in early 2005, General Electric conducted a safety recall for 70,000 dishwashers because of problems with a connector that "can short-circuit and overheat during normal use" posing a fire hazard to consumers.  In 2009, Bosch recalled about 500,000 dishwashers because "[a]n electrical component in certain model dishwasher can overheat, posing a fire hazard to consumers."  Whirlpool conducted a safety recall of about 1.7 million dishwashers in 2010 because an "electrical failure in the dishwasher's heating element can pose a serious fire hazard." Similarly, in August 2012, General Electric recalled about 1.3 million dishwashers, stating that "an electrical failure in the heating element can pose a fire hazard."  Overall, the Consumer Product Safety Commission reported that dishwashers had caused about 400 residential structure fires and 20 fire-related injuries in 2012. http://www.cpsc.gov//Global/Research-and-Statistics/Injury-Statistics/Fuel-Lighters-and-Fireworks/2010-2012-Residential-Fire-Loss-Estimates.pdf (last visited Oct. 27, 2015).

35.     In addition, Electrolux has been on notice of the defective electrical system in its dishwashers as a result of subrogation claims filed against it as a result of dishwasher fires.  For example, in 2007, an insurance company filed suit against Electrolux as a result of a dishwasher fire that caused over $75,000 in damage to the home of Robert and Susan Furlong.  *See Commerce Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:07-cv-11013 (D. Mass. 2007); *see also Evans v. Electrolux Home Prods., Inc.*, No. 4:07-cv-01782 (M.D. Pa. 2007) (dishwasher fire

in 2005); *Hanover Ins. Co. v. Electrolux Home Prods., Inc.*, No. 8:10-cv-2052 (M.D. Fla. 2010)
(dishwasher fire in 2008); *Greater New York Mut. Ins. v. Electrolux Home Prods., Inc.*, No.
3:12-cv-01266 (D. Conn. 2012) (dishwasher fire in 2009).

   C.   **The Defects pose real and actual safety risks to consumers and their
        property.**

   36.   As notices posted by Electrolux, the Consumer Product Safety Commission, and
by various manufacturers have acknowledged, a defective electrical system in a dishwasher
poses a serious safety hazard to consumers.  Also, the defective electrical system causes
Electrolux dishwashers to require expensive repairs or catastrophically fail well before the
typical life expectancy of a dishwasher.  As a result, a reasonable person deciding whether to
purchase an Electrolux dishwasher would want to know about the defective electrical system so
that they could decide whether they would pay less for an Electrolux dishwasher, or forego
purchasing one altogether.

   37.   As discussed above, when the electrical systems in Electrolux dishwasher fail,
they are prone to ignite (or ignite materials around the electrical systems) and catch fire, which
creates a serious safety risk and damages the dishwasher itself and in many cases surrounding
property.  Recall notices from General Electric, Whirlpool, and other manufacturers
acknowledge that electrical system failures can result in short-circuits, overheating, and fire.
ABC News has also reported that fire investigators believe that a fire "in or near" a Frigidaire
dishwasher may have caused the death of a woman in Oregon.  Joe Ducey, *Is Your Dishwasher a
Safety Risk?*, ABC News (Feb. 1, 2012, 6:11 PM),  http://www.abc15.com/news/local-
news/investigations/is-your-dishwasher-a-fire-risk (last visited Oct. 27, 2015).

   38.   Likewise, because of the damage that a failing electrical system can do to the
integrity of the dishwasher cabinet, consumers have reported significant property damage from

flooding. Because this flooding occurs near exposed electrical components in the dishwasher, electrical outlets, and circuit boxes, flooding may also create a risk of shorting, fire, and electrocution. The U.S. Department of Housing and Urban Development lists "Water Leaks On or Near Electrical Equipment" as an Exigent Health and Safety Hazard that threatens life, health, and safety. Department of Housing and Urban Development Notification of Exigent and Fire Safety Hazards Observed, http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_26407.pdf (last accessed Oct. 27, 2015).

> **D.     Electrolux failed to disclose and otherwise concealed the material safety risk form its consumers.**

39.     Electrolux continuously failed to disclose this defect to the public despite its testing of the dishwashers, customer complaints, replacement parts sales data, aggregate data from dishwasher dealers, industry-wide recalls, and other sources.

40.     Electrolux knew or should have known that reasonable consumers were unaware of this latent dangerous defect and that consumers reasonably expected the dishwashers to clean dishes during their effective life use without catching fire and exposing them and their property to serious risk of harm.

41.     Instead of disclosing the material safety defects, Electrolux otherwise informed its consumers that its Dishwashers were safe for use, incorporating certain features such as a Delay Start feature, which consumers would use under the expectation that the dishwashers would be safe to use.

42.     The defects—which are inherent at the point of sale of the machines—are not reasonably discoverable by dishwasher owners until they experience the symptoms of the defect, and are exposed to the safety risks. As a result of Electrolux's inaction and silence, consumers

16

are unaware that they have purchased and continue to have unsafe and unreliable dishwashers, while Electrolux continues to profit from the sale of its dishwashers to consumers. Consumers would not have purchased Electrolux dishwashers, or they would have paid far less for them, had they known they were prone to flooding and/or causing fires.

## PLAINTIFFS' INDIVIDUAL FACTS

### A.    Plaintiff Teresa Elward

43.    In March 2014, Plaintiff Teresa Elward, who resides in Chicago Illinois, purchased a Frigidaire dishwasher manufactured by Electrolux, model number FGBD2445NF, serial number TH40831783 from ABT Electronics in Glenview Illinois.

44.    On October 15, 2015, Mrs. Elward started a load of dishes and later discovered that her dishwasher was leaking when she noticed water pooling under the unit and onto her kitchen's maple wood flooring, all near electrical outlets. She identified the source of the flooding as starting under the dishwasher. Upon examination, Mrs. Elward observed that the dishwasher tub developed a hole, which led to the flooding within her kitchen. The flooding ruined Mrs. Elward's maple wood flooring where the dishwasher was located, causing the maple wood flooring under it to buckle.

45.    The following is a photo of Mrs. Elward's dishwasher, evidencing the failure:



46.     On October 16, 2015—the following day—Mrs. Elward contacted Electrolux. The customer service representative who spoke to Mrs. Elward admitted that the unit could not be repaired, did not offer Mrs. Elward enough under a warranty claim to purchase a comparable machine.  No offer of a replacement for the ruined unit was ever made.

47.     Mrs. Elward would not have purchased the dishwasher had Electrolux disclosed that the dishwasher had a defect that caused it to overheat and melt a hole in the plastic tub, thereby allowing the water in the tub to flood below the dishwasher and damage her hardwood flooring.  She did not receive the benefit of her bargain and sustained damages to her property as a result of the dishwasher's defect and subsequent failure.

**B.     Plaintiff Dennis Keesler**

48.     In 2008, Plaintiff Dennis Keesler purchased a Frigidaire dishwasher manufactured by Electrolux, model number FDBB4365FC3, from Best Buy in Stroudsburg, Pennsylvania.

49.     On or about December 14, 2013, Mr. Keesler started a load of dishes.  Shortly thereafter, he smelled smoke in his house.  He found that a fire started near the dishwasher, and extinguished the fire.  After he extinguished the fire, he identified the source of the fire as starting under the dishwasher.  The heating element of the dishwasher overheated, burning a hole

in the plastic tub, and flooding his home. In addition to the water damage, his house sustained smoke and fire damage. Below is a photo of Mr. Keesler's dishwasher.



50. Mr. Keesler subsequently contacted Electrolux about his experience but he received no offers of compensation, repair, or replacement of his destroyed dishwasher from Electrolux.

51. Mr. Keesler would not have purchased the dishwasher had Electrolux disclosed that the dishwasher's electrical system contains a defective electrical system at the point of sale, causing it to overheat and catch fire. Because of the defect, he did receive the benefit of his bargain.

### C.     Plaintiff Leasa Brittenham

52.     Plaintiff Leasa Brittenham is a resident and citizen of the State of Washington. In 2010, Ms. Brittenham purchased a Frigidaire dishwasher manufactured by Electrolux, model FFBD2411NW, from Lowes in Federal Way, Washington, and installed it in her home. Electrolux intended that consumers like Ms. Brittenham be the ultimate, end-users of these appliances, and offered warranties directly to consumers.

53.     On April 23, 2013, after sending her three children to school, she started the dishwasher, and left her home to run an errand approximately an hour later when the dishwasher was still running.  When she returned home, her house was on fire.  She immediately contacted the fire department, was able to rescue her family's pets from the house, but was not able to retrieve personal items. The damage to their home, alone, was over $65,000.

54.     In his report regarding the Brittenham house fire, the fire investigator stated: "Based on my investigation and the evidence left at the scene, it is my professional conclusion the area of fire origin was in the kitchen. The point of origin was the electric dishwasher. My conclusion is the fire started within the dishwasher. I believe the ignition source was the heating element in the bottom of the dishwasher. Therefore, after the fire started within the dishwasher, it burned away the door latch at the top of the door and the door failed allowing the fire to communicate with the surrounding kitchen and spread throughout."

55.     Below are photos of Ms. Brittenham's Electrolux dishwasher which were included in the Fire Investigator's report:

20



Front        Back

56.     Ms. Brittenham and her children were unable to live in the home for approximately 15 months while repairs and renovations were being made. While her homeowner's insurance covered damage to the real property, it did not cover damage to the family's personal belongings, including but not limited to furniture and clothing. Nor did her insurance cover other damages resulting from the fire—including veterinary bills to treat her dogs for heavy smoke inhalation.

57.     Ms. Brittenham contacted Electrolux soon after the fire, but the customer service representative simply said there was nothing the company could do to help her. Ms. Brittenham would not have purchased the dishwasher had Electrolux disclosed that the dishwasher has a material defect existing at the point of sale which could cause such catastrophic damage. She did not receive the benefit of her bargain.

### D.    Plaintiffs Nathaniel and Kathy Beck

58.    Plaintiffs Nathaniel and Kathy Beck purchased a Frigidaire dishwasher on March 12, 2011, manufactured by Electrolux, model number FFBD2407LB0B and serial number TH11027481 from Menard's in Princeton, Indiana.  Just over a year later in August 2012, the heating element came into contact with the polymer tub floor of the dishwasher, burning and melting a hole in the floor of the tub.  As a result, their dishwasher leaked water, damaging the kitchen floor and causing other water damage to adjacent cabinets and drywall.

59.    On August 15, 2012, Ms. Beck contacted the manufacturer about the problem, but Electrolux refused to cover the cost of the machine or otherwise replace it without an extended warranty plan.  Mr. Beck wrote Electrolux to inform them of the problem. Electrolux's Risk Management department replied to the inquiry (reference account # 38564630) by suggesting Mr. and Ms. Beck contact their insurance company, or alternatively sending the dishwasher, photos, estimates, work orders, and receipts to Electrolux for evaluation of the claim.  Due to the unreasonable expense involved in shipping the entire dishwasher to Electrolux, Mr. and Ms. Beck have not been able to replace their dishwasher or seek further relief from Electrolux.

60.    Not only did the Becks experience damage to the machine, itself, but their flooring was ruined by the flooding caused by the machine's defects and needs to be replaced. Mr. and Ms. Beck would not have purchased their dishwasher had Electrolux disclosed that the element of the dishwasher has a defect that causes it to overheat, sag, burn and melt the inner tub of the dishwasher.  They did not receive the benefit of their bargain.

### E.    Plaintiffs Angelia East and Sara LaVergne

61.    Plaintiff Angelia East and her mother Sara LaVergne are residents and citizens of the State of Louisiana, but purchased their Electrolux dishwasher in the State of Texas.  In or around September 2011, Ms. LaVergne and Ms. East purchased an Electrolux dishwasher, model

number appearing to be FFBD2407LS, serial number TH11141342 from Conn's in Orange, Texas. In October 2012, just over a year after purchasing the dishwasher, Ms. East noticed that the dishwasher was leaking water while it was operating. Upon investigating further, she discovered that the dishwasher's heating element had sagged, coming into contact with the polymer tub floor, and burning and melting a hole in the dishwasher's tub floor. The dishwasher now lacks the capacity to perform the task of washing dishes without flooding the kitchen and surrounding area.

62.     Ms. East contacted both Electrolux and the retailer from whom she bought the dishwasher soon after she noticed the leakage. Electrolux told her that there was nothing they could do to assist her and suggested that she file an insurance claim. The retailer suggested that they could sell her a new dishwasher to replace the defective one. Ms. LaVergne and Ms. East would not have purchased a Frigidaire dishwasher had Electrolux disclosed that the element of the dishwasher has a defect existing at the point of sale that causes it to overheat, sag, burn, and melt the inner tub of the dishwasher, resulting in leaking and flooding in their home. They did not receive the benefit of their bargain.

**F.     Plaintiffs Tony and Lauren Fitzgerald**

63.     Plaintiffs Tony and Lauren Fitzgerald purchased a home in 2009 in which a Frigidaire dishwasher manufactured by Electrolux, model number FDB1050REB2 and serial number TH72932831 was installed. The dishwasher was installed new in the home in late 2007 or early 2008. In January 2013, Mr. and Ms. Fitzgerald started the dishwasher just before going to bed, at approximately midnight. About 1:00 a.m., they were awakened by their smoke detector alarms. The entire house smelled of burning plastic, and Mr. and Ms. Fitzgerald heard sizzling as they vacated the house. When firefighters extinguished the fire, they identified the

source of the fire as starting under the dishwasher. In addition to fire damage, a hole was melted in the tub, which led to the flooding of their kitchen.

64.     Below are photographs of the Fitzgerald's Electrolux dishwasher:



65.     Following the fire, both Mr. and Mrs. Fitzgerald contacted Electrolux about their experience but no agreement was reached. Mr. and Ms. Fitzgerald would not have purchased their home with the dishwasher for the same sales price or would have immediately replaced the "new" dishwasher had Electrolux disclosed that the element of the dishwasher has a defect that causes it to overheat, sag, burn, and melt the inner tub. They did not receive the benefit of their bargain.

### G.     Plaintiff Gregory Gray

66.     Plaintiff Gregory Gray purchased a Frigidaire dishwasher manufactured by Electrolux on October 15, 2011, model number FDB520RHF2A, and serial number TH11367196 in California. Sometime around December 18, 2014, the heating element sagged and melted a hole in the bottom of the wash tub. Because the leak was not immediately discovered, mold formed in the area of the leak. Shortly after discovering the leak, Mr. Gray called Electrolux and spoke to a person who was identified as a Risk Manager. Mr. Gray was

told his unit was out of warranty and there was nothing that Electrolux would do to assist him with the damages caused by this dishwasher's failure. The Risk Manager told Mr. Gray that a Frigidaire tech out could be sent to his residence to see if the problems were caused by a defect within the dishwasher, but Mr. Gray would have to pay for that inspection. Mr. Gray declined to incur any additional expense.

67. Mold testing was completed at the Gray residence due to the leak from the dishwasher. The inspector found:

> The Kitchen (air), tested positive, meaning the indoor air levels were higher than outside and/or contained types of mold indoors in higher levels not found outdoors.

> Remediation is recommended in Lower Kitchen Cabinet area extending into Living Room. All work should be performed by certified remediation contractor following IICRC Guidelines and re-tested at completion for clearance certification by certified testing company.

68. Mr. Gray would not have purchased the dishwasher had Electrolux disclosed that the dishwasher had a defect at the point of sale that would cause it to overheat and melt the tub, resulting to leaking and mold growth in his home. He did not receive the benefit of his bargain.

**H.    Plaintiff Bethany Williams**

69. Plaintiff Bethany Williams purchased a Frigidaire unit manufactured by Electrolux from Best Buy on July 31, 2014, model number FGBD2438PF3A, and serial number TH42455891 in California. On or around September 11, 2015, the bottom heating element of the unit overheated and melted a hole in the bottom of the tub's interior, causing water to leak out of the unit and onto the adjacent floor area. The presence of the moisture caused cabinetry in the area to buckle and become damaged.

70. The photo below depicts the melted area of the unit.



71. Ms. Williams contacted Electrolux on or about September 14, 2015, and was told that the unit was out of warranty, so that Electrolux would be unable to assist her.

72. Ms. Williams would not have purchased the dishwasher had Electrolux disclosed that the dishwasher has a defect at the point of sale that causes the hearing element to overheat, sag, and melt the inner tub when used in an ordinary and expected manner. She did not receive the benefit of his bargain.

**I.      Plaintiff John McLaughlin**

73. Plaintiff John McLaughlin purchased a Frigidaire dishwasher unit manufactured by Electrolux on or around April 6, 2011, with model number FDB520RHB2A and serial number TH10938065.

74. On or around August 16, 2016, water began leaking from the dishwasher. Mr. McLaughlin initially believed that the leak was from a defective dishwasher door seal. However, upon further inspection, he realized that the heating element had melted a crack in the tub of the dishwasher. Water had leaked out of the tub through the crack to the electrical components and flooring below the dishwasher. The dishwasher cannot be repaired and will require replacement.

75. Mr. McLaughlin contacted Electrolux on or around August 22, 2016, through the Frigidaire customer service website, but Electrolux refused to offer him any relief relating to the defects in its product.

76. Mr. McLaughlin would not have purchased the dishwasher had he known that the Electrolux dishwasher was defective at the point of sale as alleged herein. He did not receive the benefit of his bargain.

**J.      Plaintiff Stacy Cisco**

77. On November 19, 2012, Plaintiff Stacy Cisco purchased an Electrolux dishwasher, model number FFBD2411NS0A, serial number TH24148903, from HH Gregg in Piqua, OH.

78. On September 25, 2016, Ms. Cisco's dishwasher failed and flooded the floor to her kitchen.

79. Upon investigation, Ms. Cisco noticed that there were burns in the bottom of the tub basin caused by the metal heating coil coming into contact with the tub.

80. Ms. Cisco contacted Electrolux, who refused to cover a replacement dishwasher because the dishwasher was outside of the manufacturer's one-year warranty.

81. Ms. Cisco would not have purchased the Electrolux dishwasher had Electrolux disclosed that the heating coil could burn a hole in the dishwasher's tub, was a safety hazard, and would cause flooding to her home. She did not receive the benefit of her bargain.

**K.** **Plaintiffs William Ferguson and Cheryl Ferguson**

82.   On April 1, 2010, Plaintiffs William and Cheryl Ferguson purchased an Electrolux dishwasher, model number DGBD2432KB0, serial number TH94926348, in Cincinnati, Ohio.

83.   On January 28, 2016, the Fergusons found that their dishwasher would not operate.  Upon opening the electrical connection, they discovered that the wires were burned black and the wire nuts were melted.  They assume that the dishwasher caught fire during its previous run. Below are photographs of the burnt wiring from their dishwasher:



28



84.     The Fergusons contacted Electrolux, first by telephone and then in writing, but were not offered a repair or replacement of the burnt dishwasher.  They were offered a 50% discount on replacement parts, but no reimbursement for labor or installation costs, which they declined because it would not fully compensate them.

85.     The Fergusons would not have purchased the dishwasher had Electrolux disclosed that the dishwasher's electrical system was prone to overheating and starting fires. Because this defect existed at the point of sale, they have lost the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Electrolux on their own behalf and on behalf of the National Class (collectively the "Classes") as defined below:

> **The National Damages Class consists of**:
> During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defect.

29

**The National Replacement Class consists of:**
During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect.

Plaintiffs also bring this case on behalf of the State Subclasses listed below, and propose these subclasses in the interest of judicial economy and efficiency. At the class certification stage, in response to discovery and pursuant to any instruction by the Court, the Plaintiffs may modify these classes in the future.

**The [State] Damages Class consists of:**
During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defect in the State of [State].

**The [State] Replacement Class consists of:**
During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of [State] an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect.

87.     Excluded from the Classes are (a) any Judge or Magistrate presiding over this action and Members of their families; (b) Electrolux and any entity in which Electrolux has a controlling interest or which has a controlling interest in Electrolux; (b) the officers and directors of Electrolux; and (d) Electrolux's legal representatives, assigns and successors; and (e) all persons who properly execute and file a timely request for exclusion from the Class or from any Court-approved Subclass.

88.     Plaintiffs meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

89.     **Numerosity**: While the exact number of Members cannot be determined yet, the Class consists at a minimum of thousands of people dispersed throughout the United States and throughout the States, such that joinder of all Members is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Electrolux.

90.     **Commonality**: Common questions of law and fact exist as to all Members of the Class. Among the questions of law and fact common to the Class are:

a.      Whether the dishwashers designed, manufactured and sold by Electrolux pose a safety risk to consumers;

b.      Whether Electrolux knew, or should have known, that the dishwashers it sold into the stream of commerce posed an unreasonable safety risk to consumers;

c.      Whether Electrolux concealed the safety risk its dishwashers posed to consumers;

d.      Whether the safety risk the dishwashers pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher;

e.      Whether the dishwashers designed and manufactured by Electrolux possess any material defect;

f.      Whether the dishwashers contain a defect presenting an unreasonable risk of melting, burning, flooding and fire;

g.      Whether Electrolux knew, or should have known, that the dishwashers contained a defect when the it placed the dishwashers into the stream of commerce;

h.      Whether Electrolux concealed the defect from consumers;

i.      Whether the existence of the defect is a material fact that reasonable purchasers would have considered in deciding whether to purchase a dishwasher for in home use;

j.      Whether the dishwashers designed and manufactured by Electrolux are of merchantable quality;

k.      Whether the dishwashers designed and manufactured by Electrolux are likely to pose a serious safety risk to consumers before the end of their reasonable expected lives;

l.      Whether the dishwashers are likely to burn, melt, cause flooding, catch on fire or fail before the end of their reasonable expected life;

31

m.     Whether the defect in Electrolux dishwashers resulted from Electrolux's negligence;

n.     Whether Electrolux breached express warranties relating to the Electrolux dishwashers by failing to recall, replace, repair and/or correct the defect in the dishwashers;

o.     Whether Electrolux breached implied warranties of merchantability relating to the dishwashers;

p.     Whether Electrolux misrepresented the characteristics, qualities and capabilities of the dishwashers;

q.     Whether Electrolux knew, or in the exercise of reasonable care, should have known of the Defect prior to distributing the dishwashers to Plaintiffs and Class Members;

r.     Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and Class Members material information regarding the defect;

s.     Whether Electrolux failed to warn consumers regarding the defective dishwashers;

t.     Whether Electrolux made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of the dishwashers in its dishwasher literature and on its website, including those relating to standards, use and reliability and otherwise engaged in unfair and deceptive trade practices pertaining to the dishwashers;

u.     Whether Electrolux should be ordered to disgorge all or part of the profits it received from the sale of the defective dishwashers;

v.     Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

w.     Whether Plaintiffs and Class Members are entitled to replacement of their defective dishwashers;

x.     Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction and requiring that Electrolux engage in a corrective notice campaign and/or a recall of the defective dishwashers; and

y.     Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

91.     **Typicality**:  Plaintiffs have substantially the same interest in this matter as all other Class Members, and their claims arise out of the same set of facts and conduct as all other Class Members.  Plaintiffs and all Class Members own or owned a dishwasher designed and/or manufactured by Electrolux with uniform defect that makes the dishwashers immediately dangerous upon purchase and causes them to fail within their expected useful lives and burn, melt, catch on fire, and flood consumers' homes.  All of the claims of Plaintiffs and Class Members arise out of Electrolux's placement into the marketplace of a dishwasher it knew was defective and caused a safety risk to consumers and from Electrolux's failure to disclose those known safety risks and the defect.  Also common to Plaintiffs' and Class Members' claims is Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective dishwashers, Electrolux's conduct in concealing the defect in the dishwashers, and Plaintiffs' and Class Members' purchase of the dishwashers.

92.     **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members.  Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent.  Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

93.     The elements of Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the Members of the Class and the general public will continue to remain at an unreasonable and serious safety and property damage risk as a result of the defect. Electrolux has acted and refused to act on grounds that apply generally to Class Members so that

final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

94.     The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Electrolux, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is furthermore not efficient, timely or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs.   Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

95.     The claims alleged herein accrued upon discovery of the defective nature of the dishwashers.  Because the defect alleged herein is hidden and Electrolux took steps to either conceal or fail to disclose the true, character, nature and quality of the dishwashers, Plaintiffs and Class Members did not discover and could not have discovered it through reasonable and diligent investigation.

96.     Any applicable statutes of limitations have been tolled by Electrolux's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiffs and Class Members could not have reasonably discovered the

true defective nature of their dishwashers until such time as the defect manifested themselves by destroying the dishwashers and/or causing flooding or fire. As a result of Electrolux's active concealment of the defect and/or failure to inform Plaintiffs and Class Members of the defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

97. Alternatively, the facts alleged above give rise to estoppel. Despite its knowledge of the fire-safety related defects in its dishwashers, Electrolux has actively concealed the defective nature of the dishwashers. Electrolux was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality and nature of the dishwashers, particularly that they posed a serious risk to life and property. At all relevant times, and continuing to this day, Electrolux knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the dishwashers. Given Electrolux's failure to disclose this non-public information about the defective nature of the dishwashers—information over which it had exclusive control—and because Plaintiffs and Class Members could not reasonably have known that the dishwashers were thereby defective, Plaintiffs and Class Members reasonably relied on Electrolux's affirmative and/or ongoing concealment. Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

98. Additionally, Electrolux is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

## FIRST CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (Plaintiffs Individually and on Behalf of the National Class and, in the alternative, State Replacement Subclasses)

99.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

100.    The implied warranty of merchantability included with the sale of each Electrolux dishwasher meant that Electrolux warranted that its dishwashers would be merchantable, fit for the ordinary purposes for which dishwashers are used, pass without objection in the trade, be of fair average quality, and conform to promises and affirmations of fact made on the container and label.  This implied warranty of merchantability is part of the basis for the bargain between Electrolux and Plaintiffs and Class Members.

101.    At the time of delivery however, Electrolux breached the implied warranty of merchantability because its dishwashers were defective as alleged above, posed serious safety risks at the time they were sold, would not pass without objection, are not fit for the ordinary purpose of safely washing dishes in a residential setting, and failed to conform to the standard performance of like products used in the trade.

102.    Within a reasonable amount of time after the defect manifested itself to Plaintiffs and Class Members, Electrolux received notice of its breach of implied warranty, as described herein.  In addition, Electrolux received notice of its breach of implied warranty by virtue of its knowledge of the defect.  Electrolux knew, or in the exercise of reasonable care should have known, that the dishwashers posed safety risks and were defective prior to sale of the dishwashers to Plaintiffs and Class Members.

103.    Any implied warranty limitation cannot be enforced here because it is unconscionable.  A substantial disparity in the parties' relative bargaining power existed such

that Plaintiffs and Class Members were unable to derive a substantial benefit from their dishwasher warranties. A disparity existed because Electrolux was aware that its dishwashers were inherently defective; Plaintiffs and the Class had no notice or ability to detect the problem; and Electrolux knew that Plaintiffs and the Class would bear the cost of correcting any defect. In this case, the disparity was increased by Electrolux's knowledge and failure to disclose that the defect would substantially limit the dishwasher's intended use and could cause catastrophic failures.

104.    The element of privity, if applicable here, exists because Electrolux had direct written communications with Plaintiffs and the Class Members regarding the dishwashers in the form of warranty forms, registration cards, or similar documents; Electrolux advertised the machines for sale via had direct communications with Plaintiffs and Class Members regarding the dishwashers through television, newspaper, the internet, magazine advertisements, and the like; the dealers who sold the dishwashers to Plaintiffs and Class Members are Electrolux's agents; Electrolux entered into contracts with Plaintiffs and Class Members through warranties; and Plaintiffs and Class Members are third-party beneficiaries of warranties that ran from Electrolux to their dealer-agents. Further, Electrolux designed and manufactured the dishwashers intending Plaintiffs and Class Members to be the ultimate users of the dishwashers.

105.    As a direct and proximate result of Electrolux's breach of its implied warranties Plaintiffs and Class Members purchased unsafe products which could not be used for their intended use of washing dishes in a residential setting, and have been damaged. Plaintiffs and Class Members seek damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY - DESIGN DEFECT
### (Plaintiffs Elward, Keesler, Gray, and Williams, Individually and on Behalf of the State Damage Classes)

106.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

107.    Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the dishwashers at issue herein.

108.    Electrolux's dishwashers were expected to and did reach the Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

109.    The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

110.    Plaintiffs and Class Members used the subject dishwashers in a manner reasonably intended by Defendant.

111.    The dishwashers were defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiffs and Class Members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the dishwashers; the dishwashers contained material design defect and were

not reasonably safe due to such defect; the design, methods of manufacture and testing of the dishwashers did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the dishwashers were manufactured; and at the time the dishwashers left Electrolux's control, the foreseeable risks associated with the dishwashers' design exceeded the benefits associated with that design.

112.    Plaintiffs and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition

### THIRD CAUSE OF ACTION
### STRICT LIABILITY – FAILURE TO WARN
### (Plaintiffs Elward, Keesler, Gray, and Williams, Individually and on Behalf of the State Damage Classes)

113.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

114.    The defective dishwashers were designed, manufactured and sold by Electrolux in the regular course of business and were expected to and did reach Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

115.    The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

116.    Electrolux had no reason to believe that consumers of its dishwashers would be aware of the foreseeable harm associated with use of them.

117.     Prior to and after distributing the dishwashers to Plaintiffs and Class Members, Electrolux had a legal duty to warn them about the defect in the dishwashers and the dangers that such defect would pose.

118.     Prior to and after distributing the dishwashers to Plaintiffs and Class Members, Electrolux and their agents who sold or serviced the dishwashers failed to warn Plaintiffs and Class Members of the defect.

119.     As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the dishwashers, Plaintiffs and Class Members suffered property damage and other incidental and consequential damages.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
**(Plaintiffs Elward, Keesler,  Fitzgerald, Gray, and Williams Individually and on Behalf of the State Damage Classes)**

120.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

121.     Electrolux owed a duty to Plaintiffs and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the dishwashers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class Members from foreseeable and unreasonable risk of harm.   Electrolux breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the dishwashers.

122.     Electrolux unreasonably failed to provide appropriate and adequate warnings and instructions about its defective dishwashers, and this failure was a proximate cause of the harm for which damages are sought.  In addition, at the time the dishwashers left its control, Electrolux knew, or in the exercise of reasonable care should have known, its defective dishwashers posed a substantial risk of harm to the life and property of its customers. Electrolux knew, or in the

exercise of reasonable care should have known, the dishwashers they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, created an unreasonable safety risk and would fail to perform as intended.

123.    Electrolux acted unreasonably in designing the dishwashers, and this conduct was a proximate cause of the harm for which damages are sought.  Further, at the time the dishwashers left the control of Electrolux, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the dishwashers. Furthermore, at the time the dishwashers left the control of the Electrolux, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a dishwasher of this design.

124.    Electrolux knew, or in the exercise of reasonable care should have known, that the dishwashers created unreasonable safety risks.  Electrolux further knew, or in the exercise of reasonable care should have known, that the dishwashers could cause property damage, personal injury, and/or death.

125.    Based on this knowledge, Electrolux had a duty to disclose to the Plaintiffs and Class Members the serious safety risks posed by the dishwashers and a duty to disclose the defective nature of the dishwashers.

126.    Electrolux had a further duty not to put the defective dishwashers on the market and has a continuing duty to replace its unsafe dishwashers, remove its unsafe dishwashers from the market and seek a recall from consumers.

127.    Electrolux failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the dishwashers by, among other things, failing to design and manufacture the dishwashers in a manner to ensure that, under normal intended usage, they would not pose unreasonable risk to life and property.

128.    Electrolux failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, Plaintiffs and Class Members of the defect in the dishwashers.

129.    Electrolux failed to exercise reasonable care when it knew of the safety risks the dishwashers posed and actively concealed those risks from Plaintiffs and Class Members.

130.    Electrolux failed to exercise reasonable care when it knew of the safety risks the dishwashers posed and failed to replace, repair or recall dishwashers it knew were unsafe and defective.

131.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members bought the dishwashers without knowledge of their defective nature or of their serious safety risks.

132.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members purchased unsafe products which could not be used for their intended use.

133.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members have suffered damages.

134.    Defendant acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling dishwashers known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew or should have known that the defect would cause their dishwashers to fail, combust, catch fire,

cause flooding, damage the dishwasher and other property, and threaten the personal safety of consumers. Electrolux knew or was repeatedly informed of the serious defect, yet failed to take any remedial action and instead continued to sell this defective product. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

## FIFTH CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN
### (Plaintiffs Elward, Keesler, Fitzgerald, Gray, and Williams Individually and on Behalf of the State Damage Classes)

135.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

136.    Electrolux knew, or by the exercise of reasonable care should have known, that the dishwashers were defective.

137.    Electrolux knew that Plaintiffs and Class Members, who used their dishwashers for their intended use, were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense and harm solely because of the defect.

138.    Electrolux owes a continuing duty to warn about the problem and to repair and/or recall the defective dishwashers.

139.    Electrolux had a pre-sale duty to warn potential purchasers that the dishwashers carried with them greater risks of failure and safety hazards than an ordinary consumer would expect when using the dishwashers in their intended or reasonably-foreseeable manner.

140.    As a direct and proximate result of Electrolux's wanton recklessness, carelessness, and negligence, Plaintiffs and Class Members suffered damages and losses, and will have to spend money to repair and/or replace the defective dishwashers and damage to other property.

43

141.     Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling dishwashers known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew that the defect would cause their dishwashers to fail, combust, catch fire, melt, cause flooding, damage the dishwasher and other property, and could threaten the personal safety of consumers. Electrolux knew of, and was repeatedly informed of, this serious defect, yet failed to take any remedial action and instead continued to sell this defective product. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 505/1, *et seq.*)**
**(Plaintiff Elward Individually and on Behalf of the Illinois Classes)**

142.     Plaintiff Elward re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

143.     At all times relevant hereto, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("Illinois CFA"), was in full force and effect.

144.     Plaintiff and other Illinois Class members may sue as consumers within the meaning of the Illinois CFA because Electrolux's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

145.     Section 2 of the Illinois CFA renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct or any trade or commerce."

146.    When Electrolux designed, developed, manufactured, marketed, and sold the Illinois Class products, it was involved in the conduct of trade and commerce under the Illinois CFA.

147.    At the time Electrolux developed, manufactured, marketed, and sold the dishwashers, it knew that they contained the defect, which poses serious safety risks to consumers like Plaintiff and the Illinois Class Members.

148.    Nonetheless, Electrolux concealed its knowledge of the defect from consumers like Plaintiff and the Illinois Class Members and instead sold its dishwashers while instructing customers to feel comfortable using them even when they are asleep or not at home.

149.    Electrolux hid the defect from consumers although the defect posed serious safety risks to consumers and to their real and personal property.

150.    Electrolux intentionally concealed the unreasonable safety risks associated with the defective dishwashers, which were material facts to consumers like Plaintiff and the Illinois Class Members.  Indeed, no reasonable consumer would have knowingly bought a dishwasher for use if that consumer had known that the product was designed with a serious defect.

151.    Despite recalls of its dishwashers abroad over concerns of them catching on fire, Electrolux neither conducted a similar recall for defective dishwasher in the United States nor notified property owners that the defective dishwashers could spontaneously fail and should be replaced.

152.    Electrolux's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the Illinois CFA.

153.    Electrolux violated the Illinois CFA when it sold the dishwashers representing to consumers that they could feel comfortable using the dishwashers while asleep or away from

home. When Electrolux failed to disclose to Plaintiff and the Illinois Class Members that the dishwashers had a defect that would result in their electrical components overheating and in some cases, failing catastrophically, Electrolux's misrepresentations posed serious safety risks to consumers, their real and personal property, and the public.

154. Electrolux violated the Illinois CFA when it sold a product that it knew was defective, when it held out to the public that its dishwashers could be used while asleep or away from home, and when it failed to warn consumers that the dishwashers contained a defect that poses serious safety risks to consumers and the public.

155. Electrolux's deceptive practices, including but not limited to marketing of the product, were designed to induce Plaintiff and the Illinois Class Members to purchase the dishwashers containing the defect and to avoid the cost of replacing, repairing or retrofitting the defective dishwashers still being sold in retail stores and already in use by thousands of consumers throughout Illinois.

156. Electrolux's violations of the Illinois CFA were designed to conceal, and Electrolux failed to disclose, material facts about the defect and the unreasonable safety risks of the dishwashers in order allow Electrolux to avoid the cost of recalling, replacing, repairing or retrofitting the dishwashers.

157. Plaintiff and the Illinois Class Members suffered injury in-fact as a direct result of Electrolux's violations of the Illinois CFA in that they have paid for dishwashers that pose an immediate safety risk and will have to be repaired or replaced.

158. Had Electrolux disclosed the true quality and defective nature of the dishwashers, Plaintiff and the Illinois Class Members would not have purchased the dishwashers or would have paid substantially less for them.

159. Plaintiff and the Illinois Subclass members have also been denied the use of their dishwashers, expended money on replacements, repairs, and damages to their personal property and suffered as a result of Electrolux's conduct.

160. To this day, Electrolux continues to violate the Illinois CFA by concealing the defective nature of the dishwashers by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the defective dishwashers, and by failing to offer replacements of their defective dishwashers to consumers.

161. As a direct and proximate result of Electrolux's unfair acts or practices alleged herein, Plaintiff and the Illinois Class Members were damaged.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 510/1, *et seq.*)**
**(Plaintiff Elward Individually and on Behalf of the Illinois Classes)**

162. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

163. At all times relevant hereto, there was in full force and effect the Uniform Deceptive Trade Practices Act (the "Illinois UDTPA"), 815 ILCS 510/1, et seq.

164. Under the Illinois UDTPA, 815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: ". . . (5) represents that goods or services have . . . uses, benefits, or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

165.    As a corporation, Electrolux is a "person" within the meaning of 815 ILCS 510/1 (5).

166.    Electrolux's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of 815 ILCS 510/1, et seq.

167.    All of the conduct and misrepresentations alleged herein occurred in the course of Defendant's business and was part of a pattern or generalized course of conduct.

168.    As described more fully above, Electrolux knew of the defect and that the dishwashers posed a serious safety risk to consumers. Electrolux concealed that knowledge and misrepresented to consumers and the public that its dishwashers could be used while unattended. Illustrations of Electrolux's concealment of the defect include: despite recalls of its dishwashers abroad over concerns of them catching on fire, Electrolux neither conducted a similar recall for defective dishwasher in the United States nor notified property owners that the defective dishwashers could spontaneously fail and should be replaced.

169.    Despite its knowledge of the serious safety risk the dishwashers posed to consumers, their property, and the public, Electrolux failed to issue a warning or repair, retrofit, recall and/or replace the dishwashers and instead concealed the defect and the safety issues with the dishwashers for years, which continues to this day.

170.    As an entity with exclusive knowledge regarding the safety risk and defect in the dishwashers, Electrolux had a duty to disclose the existence of any defect, particularly in light of the fact that the dishwashers posed a serious safety risk to Plaintiff and the Illinois Class Members.

171.    Plaintiff and the Illinois Class Members reasonably expected that Electrolux would disclose the existence of the defect and the serious safety risk the dishwashers posed to

48

consumers and the public and reasonably expected that Electrolux would not sell a product that was unsafe to use, information which is and was material to Plaintiff and the Illinois Class Members.

172.    Electrolux, at all times relevant, knew or should have known that Plaintiff and the Illinois Class Members did not know of, or could not have reasonably discovered, the safety risk of the defect and that Electrolux was in exclusive possession of the knowledge of the defect.

173.    By concealing the serious safety risk posed by its dishwashers and the existence of the defect and representing that the dishwashers could be used while unattended, Electrolux engaged in actionable conduct within the meaning of the Illinois UDTPA.

174.    Had Plaintiff and the Illinois Class Members known of the serious safety risk and/or the defect in the dishwashers, they would not have purchased the dishwashers or would have paid substantially less for their dishwashers.

175.    Defendant's deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Plaintiff and the Illinois Class Members to purchase the dishwashers.

176.    Electrolux violated the Illinois UDTPA when it concealed and/or failed to disclose the serious safety risk to consumers that its dishwashers posed, and concealed and/or failed to disclose the fact that the dishwashers were defective as described herein when it had a duty to disclose the safety risks and the defect, and instead sold the dishwashers as if they were fit for ordinary purposes, could be used safely, and did not pose an unreasonable safety risk.

177.    Electrolux violated the Illinois UDTPA when it failed to disclose the fact that the dishwashers posed a serious safety risk and were defective as described herein when it had a duty to disclose the safety risk to consumers and to disclose the defect and instead falsely represented

49

that the dishwashers could be used while unattended and sold the dishwashers as if they were safe for consumer use.

178.    Plaintiff and the Illinois Class Members lost money or property as a result of their purchases and thus Plaintiff has standing to represent the Illinois Class in this action.

179.    As a direct and proximate result of Electrolux's violation of the Illinois UDTPA alleged herein, Plaintiff and the Illinois Class Members were damaged.

180.    Plaintiff and the Illinois Class Members seek injunctive relief against Electrolux based upon the vast market share that Electrolux claims to have for dishwashers and the extremely high likelihood that Plaintiff and the Illinois Class Members may personally suffer future harm to their real and personal property from the failure of Electrolux dishwashers in their homes, businesses, and rental properties.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(73 Pa. Stat. § 201-1, *et seq.*)**
**(Plaintiff Keesler Individually and on Behalf of the Pennsylvania Classes)**

181.    Plaintiff Keesler re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

182.    At all times relevant hereto, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. State. § 201-1, *et seq.* ("Pennsylvania CPL"), was in full force and effect.

183.    Plaintiff and other Pennsylvania Class members may sue as consumers within the meaning of the Pennsylvania CPL because Electrolux's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

50

184.    73 Pa. Stat. § 201-3 and 201-2(4)(xxi) render unlawful "any fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding."

185.    When Electrolux designed, developed, manufactured, marketed, and sold the Pennsylvania Class products, it was involved in the conduct of trade and commerce under the Pennsylvania CPL.

186.    At the time Electrolux developed, manufactured, marketed, and sold the dishwashers, it knew that they contained the defect, which poses serious safety risks to consumers like Plaintiff and the Pennsylvania Class Members.

187.    Nonetheless, Electrolux concealed its knowledge of the defect from consumers like Plaintiff and the Pennsylvania Class Members and instead sold its dishwashers while instructing customers to feel comfortable using them even when they are asleep or not at home.

188.    Electrolux hid the Defect from consumers although the defect poses serious safety risks to consumers and to their real and personal property.

189.    Electrolux intentionally concealed the unreasonable safety risks associated with the defective dishwashers, which were material facts to consumers like Plaintiff and the Pennsylvania Class Members.  Indeed, no reasonable consumer would have knowingly bought a dishwasher for use if that consumer had known that the product was designed with a serious defect.

190.    Despite recalls of its dishwashers abroad over concerns of them catching on fire, Electrolux neither conducted a similar recall for defective dishwasher in the United States nor notified property owners that the defective dishwashers could spontaneously fail and should be replaced.

191.    Electrolux's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the Pennsylvania CPL.

192.    Electrolux violated the Pennsylvania CPL when it sold the dishwashers representing to consumers that they could feel comfortable using the dishwashers while asleep or away from home. When Electrolux failed to disclose to Plaintiff and the Pennsylvania Class Members that the dishwashers had a defect that would result in their electrical components overheating and in some cases, failing catastrophically, Electrolux's misrepresentations posed serious safety risks to consumers, their real and personal property, and the public.

193.    Electrolux violated the Pennsylvania CPL when it sold a product that it knew was defective, when it held out to the public that its dishwashers could be used while asleep or away from home, and when it failed to warn consumers that the dishwashers contained a defect that pose serious safety risks to consumers and the public.

194.    Electrolux's deceptive practices, including but not limited to marketing of the product, were designed to induce Plaintiff and the Pennsylvania Class Members to purchase the dishwashers containing the defect and to avoid the cost of replacing, repairing or retrofitting the defective dishwashers still being sold in retail stores and already in use by thousands of consumers throughout Pennsylvania.

195.    Electrolux's violations of the Pennsylvania CPL were designed to conceal, and Electrolux failed to disclose, material facts about the defect and the unreasonable safety risks of the dishwashers in order allow Electrolux to avoid the cost of recalling, replacing, repairing or retrofitting the dishwashers.

196.     Plaintiff and the Pennsylvania Class Members suffered injury in-fact as a direct result of Electrolux's violations of the Pennsylvania CPL in that they have paid for dishwashers that pose an immediate safety risk and will have to be repaired or replaced.

197.     Had Electrolux disclosed the true quality and defective nature of the dishwashers, Plaintiff and the Pennsylvania Class Members would not have purchased the dishwashers or would have paid substantially less for them.

198.     Plaintiff and the Pennsylvania Class Members have also been denied the use of their dishwashers, expended money on replacements, repairs, and damages to their personal property and suffered as a result of Electrolux's conduct.

199.     To this day, Electrolux continues to violate the Pennsylvania CPL by concealing the defective nature of the dishwashers by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the defective dishwashers, and by failing to offer replacements of their defective dishwashers to consumers.

200.     As a direct and proximate result of Electrolux's deceptive acts or practices alleged herein, Plaintiff and the Pennsylvania Class Members were damaged.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
#### (RCW § 19.86.010 *et seq.*)
#### (Plaintiff Brittenham Individually and on Behalf of the Washington Classes)

201.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

202.     At all times relevant hereto, the Washington Consumer Protection Act, Revised Code of Washington § 19.86.010, *et seq.* ("Washington CPA"), was in full force and effect.

203.     Plaintiff and other Washington Class Members may sue as consumers within the meaning of the Washington CPA because Electrolux's business activities involve trade or

commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

204.    RCW § 19.86.020 states, "Unfair or deceptive acts or practices in the conduct of any trade or conduct are hereby declared unlawful."

205.    When Electrolux designed, developed, manufactured, marketed, and sold the Washington Class products, it was involved in the conduct of trade and commerce under the Washington CPA.

206.    At the time Electrolux developed, manufactured, marketed, and sold the dishwashers, it knew that they contained the defect, which poses serious safety risks to consumers like Plaintiff and the Washington Class Members.

207.    Nonetheless, Electrolux concealed its knowledge of the defect from consumers like Plaintiff and the Washington Class Members and instead sold its dishwashers while instructing customers to feel comfortable using them even when they are asleep or not at home.

208.    Electrolux hid the Defect from consumers although the defect poses serious safety risks to consumers and to their real and personal property.

209.    Electrolux intentionally concealed the unreasonable safety risks associated with the defective dishwashers, which were material facts to consumers like Plaintiff and the Washington Class Members.  Indeed, no reasonable consumer would have knowingly bought a dishwasher for use if that consumer had known that the product was designed with a serious defect.

210.    Despite recalls of its dishwashers abroad over concerns of them catching on fire, Electrolux neither conducted a similar recall for defective dishwasher in the United States nor

notified property owners that the defective dishwashers could spontaneously fail and should be replaced.

211.    Electrolux's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the Washington CPA.

212.    Electrolux violated the Washington CPA when it sold the dishwashers representing to consumers that they could feel comfortable using the dishwashers while asleep or away from home. When Electrolux failed to disclose to Plaintiff and the Washington Class Members that the dishwashers had a defect that would result in their electrical components overheating and in some cases, failing catastrophically, Electrolux's misrepresentations posed serious safety risks to consumers, their real and personal property, and the public.

213.    Electrolux violated the Washington CPA when it sold a product that it knew was defective, when it held out to the public that its dishwashers could be used while asleep or away from home, and when it failed to warn consumers that the dishwashers contained a defect that pose serious safety risks to consumers and the public.

214.    Electrolux's deceptive practices, including but not limited to marketing of the product, were designed to induce Plaintiff and the Washington Class Members to purchase the dishwashers containing the defect and to avoid the cost of replacing, repairing or retrofitting the defective dishwashers still being sold in retail stores and already in use by thousands of consumers throughout Washington.

215.    Electrolux's violations of the Washington CPA were designed to conceal, and Electrolux failed to disclose, material facts about the defect and the unreasonable safety risks of the dishwashers in order allow Electrolux to avoid the cost of recalling, replacing, repairing or retrofitting the dishwashers.

216.    Plaintiff and the Washington Class Members suffered injury in-fact as a direct result of Electrolux's violations of the Washington CPA in that they have paid for dishwashers that pose an immediate safety risk and will have to be repaired or replaced.

217.    Had Electrolux disclosed the true quality and defective nature of the dishwashers, Plaintiff and the Washington Class Members would not have purchased the dishwashers or would have paid substantially less for them.

218.    Plaintiff and the Washington Class Members have also been denied the use of their dishwashers, expended money on replacements, repairs, and damages to their personal property and suffered as a result of Electrolux's conduct.

219.    To this day, Electrolux continues to violate the Washington CPA by concealing the defective nature of the dishwashers by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the defective dishwashers, and by failing to offer replacements of their defective dishwashers to consumers.

220.    As a direct and proximate result of Electrolux's unfair acts or practices alleged herein, Plaintiff and the Washington Class Members were damaged.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE WASHINGTON PRODUCT LIABILITY ACT**
**(RCW § 7.72 *et seq.* – Not Reasonably Safe Product)**
**(Plaintiff Brittenham Individually and on Behalf of the Washington Classes)**

221.    Plaintiff Brittenham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

222.    Electrolux is a "seller" and/or "manufacturer" within the meaning of the Washington Product Liability Act ("WPLA"), RCW 7.72.010(1)-(2).  Electrolux is engaged in the business of selling residential dishwashers, whether the sale is for resale, or for use and consumption.    Electrolux also    designs,    produces,    makes,    fabricates,    constructs,    or

56

remanufactures residential dishwashers and/or the component parts of the dishwashers before their sale to a user or consumer. The Electrolux dishwashers are "products" within the meaning of the WPLA, RCW 7.72.010(3).

223. Electrolux has a duty to exercise reasonable care in the design of its products. This duty included the duty to ensure that the product would function properly in all of its foreseeable uses.

224. Electrolux's dishwashers were expected to and did reach Plaintiff and the Washington Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

225. The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

226. Plaintiff Brittenham and the Washington Class Members used the subject dishwashers in a manner reasonably intended by Electrolux.

227. The dishwashers were defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiff Brittenham and the Washington Class Members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the dishwashers; the dishwashers contained material design defects and were not reasonably safe due to such defect; the design, methods of manufacture and testing of the dishwashers did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the dishwashers were manufactured; and at the time the dishwashers left Electrolux's control, the

foreseeable risks associated with the dishwashers' design exceeded the benefits associated with that design.

228. Plaintiff and the Washington Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF THE WASHINGTON PRODUCT LIABILITY ACT**
**(RCW § 7.72 *et seq.* – Failure to Warn)**
**(Plaintiff Brittenham Individually and on Behalf of the Washington Classes)**

229. Plaintiff Brittenham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

230. Electrolux is a "seller" and/or "manufacturer" within the meaning of the Washington Product Liability Act (WPLA), RCW 7.72.010(1)-(2). Electrolux is engaged in the business of selling residential dishwashers, whether the sale is for resale, or for use and consumption. Electrolux also designs, produces, makes, fabricates, constructs, or remanufactures residential dishwashers and/or the component parts of the dishwashers before their sale to a user or consumer. The Electrolux dishwashers are "products" within the meaning of the WPLA, RCW 7.72.010(3).

231. The defective dishwashers were designed, manufactured, and sold by Electrolux in the regular course of business and were expected to and did reach Plaintiff Brittenham and the Washington Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

232. The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and

58

applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

233.    Electrolux had no reason to believe that consumers of its dishwashers would be aware of the foreseeable harm associated with use of the dishwashers.

234.    Prior to and after distributing the dishwashers to Plaintiff and the Washington Class Members, Electrolux had a legal duty to warn them about the defect in the dishwashers and the dangers that such defect would pose.

235.    Prior to and after distributing the dishwashers to Plaintiff and the Washington Class Members, Electrolux and their agents who sold or serviced the dishwashers failed to warn Plaintiff Brittenham and the Washington Class Members of the defect.

236.    As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the dishwashers, Plaintiff Brittenham and the Washington Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

### TWELFTH CAUSE OF ACTION
### INDIANA PRODUCT LIABILITY ACT - DESIGN DEFECT
### (Plaintiffs Nathaniel and Kathy Beck Individually and on Behalf of the Indiana Classes)
### (Ind. Code § 34-20-1-11)

237.    Plaintiffs Nathaniel and Kathy Beck re-allege and incorporate the preceding paragraphs as if fully set forth herein.

238.    At all relevant times, the Indiana Product Liability Act ("Indiana PLA") was in full force and effect.

239.    Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances, and did

design, manufacture, distribute, advertise, market, promote and/or sell the dishwashers at issue herein.

240.     Electrolux's dishwashers were expected to and did reach the Plaintiffs and Indiana Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

241.     The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire. Ind. Code § 34-20-2-1 and § 34-20-9-1.

242.     Plaintiffs and Indiana Class Members received the subject dishwashers in the conditions in which they were sold, and used their dishwashers in a manner reasonably intended by Defendant.

243.     The dishwashers were defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiffs and Indiana Class Members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the dishwashers; the dishwashers contained material design defect and were not reasonably safe due to such defect; the design, methods of manufacture and testing of the dishwashers did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the dishwashers were manufactured; and at the time the dishwashers left Electrolux's control, the foreseeable risks associated with the dishwashers' design exceeded the benefits associated with that design.

244.   Plaintiffs and Indiana Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition. Ind. Code § 34-20-2-1.

245.   Defendant acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling dishwashers known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew or should have known that the defect would cause their dishwashers to fail, combust, catch fire, cause flooding, damage the dishwasher and other property, and threaten the personal safety of consumers. Electrolux knew or was repeatedly informed of the serious defect, yet failed to take any remedial action and instead continued to sell this defective product. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Indiana Class Members seek exemplary or punitive damages.

**THIRTEENTH CAUSE OF ACTION**
**INDIANA PRODUCT LIABILITY ACT – FAILURE TO WARN**
**(Plaintiffs Nathaniel and Kathy Beck Individually and on**
**Behalf of the Indiana Classes)**

246.   Plaintiffs Nathaniel and Kathy Beck re-allege and incorporate the preceding paragraphs as if fully set forth herein.

247.   The defective dishwashers were designed, manufactured and sold by Electrolux in the regular course of business and were expected to and did reach Plaintiffs and Indiana Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

248.   The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and

61

applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

249.    Plaintiffs and Indiana Class Members received the dishwashers in the same conditions in which they were sold, and used their dishwashers in a manner reasonably intended by Defendant.

250.    Electrolux had no reason to believe that consumers of its dishwashers would be aware of the foreseeable harm associated with use of them.

251.    Pursuant to Ind. Code § 34-20-2-2 and § 34-20-4-2, prior to and after distributing the dishwashers to Plaintiffs and Indiana Class Members, Electrolux had a legal duty to warn them about the defect in the dishwashers and the dangers that such defect would pose.

252.    Prior to and after distributing the dishwashers to Plaintiffs and Indiana Class Members, Electrolux and their agents who sold or serviced the dishwashers failed to warn Plaintiffs and Indiana Class Members of the defect.

253.    As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the dishwashers, Plaintiffs and Indiana Class Members suffered property damage and other incidental and consequential damages.

254.    This Action was brought within ten years of the date Plaintiffs purchased their dishwasher, so it is timely pursuant to Ind. PLA § 34-2-3-1(a).

**FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(Plaintiffs Nathaniel and Kathy Beck Individually and on Behalf of the Indiana Classes)**

255.    Plaintiffs Nathaniel and Kathy Beck re-allege and incorporate the preceding paragraphs as if fully set forth herein.

256.    At all times relevant hereto, the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-10, *et seq.* ("Indiana DCSA"), was in full force and effect.

257.    Plaintiffs and other Indiana Class Members may sue as consumers within the meaning of the Indiana DCSA because Electrolux's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

258.    Ind. Code § 24-5-0.5-3 renders unlawful "an unfair, abusive, or deceptive act, omission or practice in connection with a consumer transaction."

259.    When Electrolux designed, developed, manufactured, marketed, and sold the Indiana Class products, it was involved in the conduct of trade and commerce under the Indiana DCSA.

260.    At the time Electrolux developed, manufactured, marketed, and sold the dishwashers, it knew that they contained the defect, which poses serious safety risks to consumers like Plaintiff and the Indiana Class Members.

261.    Nonetheless, Electrolux concealed its knowledge of the defect from consumers like Plaintiffs and the Indiana Class Members and instead sold its dishwashers while instructing customers to feel comfortable using them even when they are asleep or not at home.

262.    Electrolux hid the Defect from consumers although the defect poses serious safety risks to consumers and to their real and personal property.

263.    Electrolux intentionally concealed the unreasonable safety risks associated with the defective dishwashers, which were material facts to consumers like Plaintiffs and the Indiana Class Members.  Indeed, no reasonable consumer would have knowingly bought a dishwasher for use if that consumer had known that the product was designed with a serious defect.

264.     Despite recalls of its dishwashers abroad over concerns of them catching on fire, Electrolux neither conducted a similar recall for defective dishwasher in the United States nor notified property owners that the defective dishwashers could spontaneously fail and should be replaced.

265.     Electrolux's intentional misrepresentations, omissions and concealments of material fact constitute deceptive practices in violation of the Indiana DCSA.

266.     Electrolux violated the Indiana DCSA when it sold the dishwashers representing to consumers that they could feel comfortable using the dishwashers while asleep or away from home. When Electrolux failed to disclose to Plaintiffs and the Indiana Class Members that the dishwashers had a defect that would result in their electrical components overheating and in some cases, failing catastrophically, Electrolux's misrepresentations posed serious safety risks to consumers, their real and personal property, and the public.

267.     Electrolux violated the Indiana DCSA when it sold a product that it knew was defective, when it held out to the public that its dishwashers could be used while asleep or away from home, and when it failed to warn consumers that the dishwashers contained a defect that pose serious safety risks to consumers and the public.

268.     Electrolux's deceptive practices, including but not limited to marketing of the product, were designed to induce Plaintiffs and the Indiana Class Members to purchase the dishwashers containing the defect and to avoid the cost of replacing, repairing or retrofitting the defective dishwashers still being sold in retail stores and already in use by thousands of consumers throughout Pennsylvania.

269.     Electrolux's violations of the Indiana DCSA were designed to conceal, and Electrolux failed to disclose, material facts about the defect and the unreasonable safety risks of

64

the dishwashers in order allow Electrolux to avoid the cost of recalling, replacing, repairing or retrofitting the dishwashers.

270.    Plaintiffs and the Indiana Class Members suffered injury in-fact as a direct result of Electrolux's violations of the Indiana DCSA in that they have paid for dishwashers that pose an immediate safety risk and will have to be repaired or replaced.

271.    Had Electrolux disclosed the true quality and defective nature of the dishwashers, Plaintiffs and the Indiana Class Members would not have purchased the dishwashers or would have paid substantially less for them.

272.    Plaintiffs and the Indiana Class Members have also been denied the use of their dishwashers, expended money on replacements, repairs, and damages to their personal property and suffered as a result of Electrolux's conduct.

273.    Notice prior to filing suit is not required pursuant to Indiana DCSA § 24-5-0.5-5 as acts of Defendant constitute an incurable deceptive act.  *See* Indiana DCSA § 24-5-0.5-5.2(8).

274.    To this day, Electrolux continues to violate the IDCSA by concealing the defective nature of the dishwashers by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the defective dishwashers, and by failing to offer replacements of their defective dishwashers to consumers.

275.    As a direct and proximate result of Electrolux's deceptive acts or practices alleged herein, Plaintiffs and the Indiana Class Members were damaged.

## FIFTEENTH CAUSE OF ACTION
## CALIFORNIA UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (Plaintiffs Gray, Williams, and McLaughlin,
### Individually and on behalf of the California Classes)

276. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

277. Electrolux has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, or fraudulent business acts or practices.

278. Electrolux's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law. In connection with the marketing and sale of its dishwashers, Electrolux failed to disclose material information—namely that its dishwashers are dangerously defective because their electrical systems overheat and catch fire, burning or melting holes through the dishwasher, causing flooding, or causing the entire dishwasher and surrounding area to ignite, melt, and burn. Despite its knowledge of the issue, Electrolux has frequently denied the existence of a problem.

279. Electrolux's business acts and practices are unlawful in that they violate California's Consumers Legal Remedies Act and California's Song-Beverly Consumer Warranty Act, as discussed in causes of action that follow.

280. These acts and practices constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Electrolux knowingly conceals and fails to disclose that its dishwashers are dangerously defective and that they overheat and catch fire.

66

Had Electrolux disclosed this fact, Plaintiffs and members of the proposed California Classes would not have purchased Electrolux dishwashers or would have paid significantly less for them.

281. Electrolux's conduct also constitutes unfair business practices in that:

    a.    The gravity of harm to Plaintiffs and the proposed California Classes from Electrolux's conduct far outweighs any legitimate utility of that conduct;

    b.    Electrolux's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the proposed California Classes; and

    c.    Electrolux's conduct undermines or violates the stated policies underlying California's Consumers Legal Remedies Act and California's Song-Beverly Consumer Warranty Act, which seek to protect consumers against unfair business practices and to promote a basic level of honesty and reliability in the marketplace.

282. As a direct and proximate result of Electrolux's business practices, Plaintiffs and the proposed California Class Members suffered injury in fact and lost money or property because they purchased dishwashers that they otherwise would not have, or in the alternative, would have paid far less for, and now own dishwashers of decreased value due to their defective nature. Meanwhile, Electrolux has sold more dishwashers than it otherwise could have and charged inflated prices for the dishwashers, unjustly enriching itself thereby.

283. Plaintiffs and the proposed California Class Members are entitled to equitable relief, including an order requiring Electrolux to adequately disclose and repair the problems in its dishwashers, restitution and disgorgement of all profits paid to Electrolux as a result of its unfair, deceptive, and fraudulent practices, and reasonable attorneys' fees and costs.

**SIXTEENTH CAUSE OF ACTION**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(Plaintiffs Gray, Williams, and McLaughlin, Individually**
**and on behalf of the California Classes)**

284.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

285.     Electrolux is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

286.     Plaintiffs and members of the class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

287.     Electrolux's acts and practices, which were intended to result and which did result in the sale of Electrolux dishwashers to Plaintiffs and the proposed California Classes, violate § 1770 of the Consumers Legal Remedies Act in that:

       d.     Electrolux represents that its dishwashers have characteristics, uses, or benefits which they do not have;

       e.     Electrolux advertises its goods with intent not to sell them as advertised;

       f.     Electrolux represents that its dishwashers are of a particular standard, quality, or grade when they are not; and

       g.     Electrolux represents that its goods have been supplied in accordance with a previous representation when they have not.

288.     As described above, in connection with the marketing and sale of its dishwashers to Plaintiffs and the proposed California Class Members, Electrolux failed to disclose material information—namely that its dishwashers are dangerously defective because their electrical

systems overheat and catch fire, burning holes through the dishwasher, causing flooding, or causing the entire dishwasher and surrounding area to ignite and burn. Despite its knowledge of the issue, Electrolux has frequently denied the existence of a problem.

289. As a direct and proximate result of Electrolux's failure to disclose this issue, Plaintiffs and the proposed California Class Members suffered injury in fact and lost money or property because they purchased dishwashers that they otherwise would not have, or in the alternative, would have paid far less for, and now own dishwashers of decreased value due to their defective nature. Meanwhile, Electrolux has sold more dishwashers than it otherwise could have and charged inflated prices for the dishwashers, unjustly enriching itself thereby.

290. Pursuant to Cal. Civ. Code § 1780, Plaintiffs seek an order enjoining Electrolux from the unlawful practices described above, a declaration that Electrolux's conduct violates the Consumers Legal Remedies Act, and reasonable attorneys' fees and costs of litigation.

291. Plaintiffs will send a notice letter to Electrolux pursuant to the provisions of Cal. Civ. Code § 1782(a) to provide them with the opportunity to correct their business practices. If Electrolux does not thereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

### SEVENTEENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES
### UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT
### (Cal. Civ. Code § 1792, 1791.1, *et seq.*)
### (Plaintiffs Gray, Williams, and McLaughlin,
### Individually and on behalf of the California Classes)

292. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

293.     Electrolux dishwashers are "consumer goods" and Plaintiffs Gray, Williams, McLaughlin, and the proposed California Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.  Electrolux is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

294.     The implied warranty of merchantability included with each sale of an Electrolux dishwasher means that Electrolux warranted that each item (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which a dishwasher would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

295.     Electrolux dishwashers would not pass without objection in the appliance trade because the dishwashers are prone to overheating, catching fire, and melting holes, which also makes them unfit for the ordinary purpose for which dishwashers are used.

296.     Electrolux dishwashers are not adequately labeled because their labeling fails to disclose that they may overheat, catch fire, and melt holes, and does not advise the members of the proposed California Classes of the existence of the issue prior to experiencing it first-hand.

297.     Electrolux's actions have deprived Plaintiffs and members of the proposed California Classes of the benefit of their bargain and have caused the dishwashers to be worth much less than what Plaintiffs and the other members of the proposed California Classes paid.

298.     As a direct and proximate result of Electrolux's breach of its duties, the proposed California Class Members received goods whose condition substantially impairs their value. Plaintiffs and the California Class Members have been damaged by the diminished value of their dishwashers, the dishwashers.

299.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and the proposed California Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the dishwashers, or the overpayment or diminution in value of the dishwashers, and are also entitled to reasonable attorneys' fees and costs.

**EIGHTEENTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Plaintiffs, Except for East and LaVergne, Individually and on Behalf of the State Classes)**

300.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

301.    Electrolux concealed material facts from Plaintiffs and Class Members public. Electrolux knew that its dishwashers contained defective electrical systems but concealed those facts such that consumers in the United States had no such knowledge.

302.    Electrolux had a duty to disclose the Defect to Plaintiffs and Class Members, but it failed to do so.

303.    Electrolux also knew that Plaintiffs and Class Members had no knowledge that its dishwashers were defective and that they did not have an equal opportunity to discover the facts. Electrolux was in a superior position than Plaintiffs and Class Members.

304.    By failing to disclose the material facts concerning its dishwashers, Electrolux intended to induce Plaintiffs and Class Members into purchasing the dishwashers.

305.    Plaintiffs and Class Members would not have purchased the dishwashers had they known that they have defective electrical systems, or would not have paid as much as they did.

306.    Electrolux benefited from the sales of its dishwashers as a result of its nondisclosure.

307. When Class Members experienced problems with their dishwashers, and called Electrolux to make any warranty claims, Electrolux routinely charged class members a fee to inspect their machines or otherwise determined—without inspection—that it would not cover the cost of repair or replacement. Alternatively, Electrolux routinely failed to honor its warranties with consumers concerning the defect at issue because it did not offer consumers who experienced failure with their machines the necessary repair or replacement costs.

308. As a direct and proximate cause of Electrolux's conduct, Plaintiffs and Class Members have suffered damages.

309. Electrolux's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and Class Members such that punitive damages are appropriate.

**NINETEENTH CAUSE OF ACTION**
**LOUISIANA PRODUCTS LIABILITY ACT – BREACH OF EXPRESS WARRANTIES**
**(Plaintiffs Angelia East and Sara LaVergne**
**Individually and on behalf of the Louisiana Classes)**

310. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

311. In addition to any and all damages, attorneys' fees and other remedies made available to Plaintiffs and Louisiana Class Members under the warranty of fitness and/or redhibitory defects, Electrolux is liable to Plaintiffs and Louisiana Class Members under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*

312. Electrolux is a manufacturer for purposes of the LPLA, and the subject dishwashers are products for the purposes of the LPLA.

313. Plaintiffs and Louisiana Class Members (or others) used the Electrolux dishwashers in a manner that was reasonably anticipated by Electrolux.

314.    The defective dishwashers were designed, manufactured, and sold by Electrolux in the regular course of business and were expected to and did reach Plaintiffs and Louisiana Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

315.    The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage, and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical system overheating and/or failure would spontaneously occur, resulting in flooding or fire.  These defects, resulting in flooding or fire, are likely to cause damages.

316.    Electrolux makes express warranties regarding its dishwashers.  For example, Electrolux expressly warrants that its dishwashers are "guaranteed to be free of material defects or component malfunctions."[2]

317.    The dishwashers are, in all cases, unreasonably dangerous by virtue of the previously alleged defects.  The defects do not in any way contribute to or enhance the utility of the dishwashers but instead pose a material risk to personal health, real and personal property, the economic value of such property, and the financial wellbeing of the owners of such property.

318.    The defects constitute material defects and/or component malfunctions, and otherwise deviate materially from express warranties made by Electrolux.  The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical system overheating and/or failure would spontaneously occur, resulting in flooding or fire and damages

---

[2] http://www.electroluxappliances.com/Owner-Support/Warranty-Info/ (last visited December 12, 2016).

to property and threatening the personal safety of nearby individuals. These defects run contrary to express warranties made by Electrolux.

319. The unreasonably dangerous defects have caused damages to Plaintiffs' and Louisiana Class Members' property, health, the economic value of such property, and the financial wellbeing of the owners of such property.

320. Electrolux is liable to Plaintiffs and Louisiana Class Members for all available damages pursuant to the LPLA for breach of express warranties.

## TWENTIETH CAUSE OF ACTION
## LOUISIANA PRODUCTS LIABILITY ACT – FAILURE TO WARN
### (Plaintiffs Angelia East and Sara LaVergne
### Individually and on behalf of the Louisiana Classes)

321. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

322. In addition to any and all damages, attorneys' fees and other remedies made available to Plaintiffs and Louisiana Class Members under the warranty of fitness and/or redhibitory defects, Electrolux is liable to Plaintiffs and Class Members under the LPLA.

323. Defendant Electrolux is a manufacturer for purposes of the LPLA, and the subject dishwashers are products for purposes of the LPLA.

324. Plaintiffs and Louisiana Class Members (or others) used the Electrolux dishwashers in a manner that was reasonably anticipated by Electrolux.

325. The defective dishwashers were designed, manufactured, and sold by Electrolux in a the regular course of business and were expected to and did reach Plaintiffs and Louisiana Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

326.     The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage, and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical system overheating and/or failure would spontaneously occur, resulting in flooding or fire.  These defects, resulting in flooding or fire, are likely to cause damages.

327.     Electrolux had no reason to believe that consumers of its dishwashers would be aware of the foreseeable harm associated with use of them.

328.     Prior to and after distributing the dishwashers to Plaintiffs and Louisiana Class Members, Electrolux had a legal duty to warn them about the defects in the dishwashers and the dangers that such defects would pose.

329.     Prior to and after distributing the dishwashers to Plaintiffs and Louisiana Class Members, Electrolux and its agents who sold and/or serviced the dishwashers failed to use reasonable care to provide an adequate warning of the defects to Plaintiffs and Louisiana Class Members.

330.     As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the dishwashers, Plaintiffs and Louisiana Class Members suffered property damage and other incidental and consequential damages.

331.     The cause of such damages arose and arises from reasonably anticipated use of the Electrolux dishwashers, occurred and occurs with great frequency, and caused and causes severe damage.

332.     Electrolux is liable to Plaintiffs and Louisiana Class Members for all available damages pursuant to the LPLA for failure to warn.

## TWENTY-FIRST CAUSE OF ACTION
## LOUISIANA PRODUCTS LIABILITY ACT – DESIGN DEFECT
### (Plaintiffs Angelia East and Sara LaVergne
### Individually and on behalf of the Louisiana Classes)

333. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

334. In addition to any and all damages, attorneys' fees and other remedies made available to Plaintiffs and Class Members under the warranty of fitness and/or redhibitory defects, Electrolux is liable to Plaintiffs and Louisiana Class Members under the LPLA.

335. Electrolux is a manufacturer for purposes of the LPLA, and the subject dishwashers are products pursuant to the LPLA.

336. Plaintiffs and Louisiana Class Members (or others) used the Electrolux dishwashers in a manner that was reasonably anticipated by Defendant Electrolux.

337. The defective dishwashers were designed, manufactured, and sold by Electrolux in a the regular course of business and were expected to and did reach Plaintiffs and Louisiana Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

338. The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical system overheating and/or failure would spontaneously occur, resulting in flooding or fire. These defects, resulting in flooding or fire, are likely to cause damages.

339. Electrolux's dishwashers are unreasonably dangerous in design, in that, at the time that the dishwashers left Electrolux's control, there existed an alternative design for the

76

product that was capable of preventing Plaintiffs' and Louisiana Class Members' damages, and the likelihood of the defects causing Plaintiffs' and Louisiana Class Members' damages and the gravity of such harm outweighed the burden (if any) on Electrolux in adopting such alternate design and the adverse effect (if any) on the utility of the Electrolux dishwashers.

340.    As a direct and proximate result of the alleged design defects, in all cases, of Electrolux's dishwashers, Plaintiffs and Louisiana Class Members suffered property damage and other incidental and consequential damages.

341.    Defendant Electrolux is liable to Plaintiffs and Louisiana Class Members for all available damages pursuant to the LPLA for the alleged design defects.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.    An Order certifying this action as a class action;

B.    An Order appointing Plaintiffs as class representatives and appointing counsel undersigned to represent the Classes;

C.    A Declaration that the Electrolux dishwashers are defective;

D.    An Order awarding injunctive relief by requiring Electrolux to issue corrective actions including notification, recall, inspection and, as necessary, repair and replacement of the dishwashers;

E.    Payment to the Classes of all damages associated with the defective products, in an amount to be proven at trial;

F.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Classes;

G.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute;

H.     Such other and further relief as this Court may deem just, equitable, or proper.

Date: December 12, 2016                Respectfully submitted,

/s/ Edward A. Wallace
Edward A. Wallace
Amy E. Keller
Adam Prom
**WEXLER WALLACE LLP**
55 W. Monroe St., Ste. 3300
Chicago, Illinois 60603
Tel:    312-346-2222
Fax:   312-346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com
ap@wexlerwallace.com

Gregory F. Coleman
Lisa A. White
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel:    865-247-0080
Fax:   865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Shanon Carson
Arthur Stock
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Tel:    215-875-5704
Fax:   215-875-4604
scarson@bm.net

78

astock@bm.net

*Attorneys for Plaintiffs and the Putative Class Members*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 12th day of December 2016.

/s/ Edward A. Wallace
Edward A. Wallace