**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERESA ELWARD, DENNIS KEESLER, BETHANY WILLIAMS, CHERYL FERGUSON, NATHANIEL BECK, TONY FITZGERALD, STACY CISCO, JOHN McLAUGHLIN, LEASA BRITTENHAM, WILLIAM FERGUSON, KATHY BECK, and LAUREN FITZGERALD, individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **15 C 9882** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **ELECTROLUX HOME PRODUCTS, INC.,** | ) ) ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy and Nathaniel Beck, Tony and Lauren Fitzgerald, Bethany Williams, John McLaughlin, Stacy Cisco, and William and Cheryl Ferguson ("Plaintiffs") have sued Defendant Electrolux Home Products, Inc. ("Electrolux") on behalf of putative classes in regard to their purchase of dishwashers manufactured by Electrolux that unexpectedly overheated, causing fires and flooding. Plaintiffs bring various state law claims on behalf of themselves and others similarly situated in the states of California, Illinois, Indiana, Ohio, Pennsylvania, Virginia, and Washington seeking a combination of declaratory, injunctive, and compensatory relief. Electrolux has filed a motion to dismiss several counts alleged in Plaintiffs' Consolidated Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Specifically, Electrolux moves to dismiss Count I (claim by all Plaintiffs for breach of the implied warranty of merchantability), Counts X and XI (claims by the Washington Plaintiff under the Washington

Product Liability Act), Counts XII and XIII (claims by the Indiana Plaintiffs under the Indiana Product Liability Act), Count XIV (claim by the Indiana Plaintiffs under the Indiana Deceptive Consumer Sales Act), Count XVII (claim by the California Plaintiffs under the Song-Berly Consumer Warranty Act), and Count XVIII with respect to the Indiana and Ohio Plaintiffs (claim for fraudulent concealment). For the reasons set forth below, Electrolux's motion to dismiss is denied.

## Factual Background[1]

Electrolux is the world's second-largest appliance maker by units sold. Consol. Am. Compl. ¶ 22, ECF No. 93. Electrolux designs and manufactures residential dishwashers that are sold under a variety of brand names, including its popular Frigidaire brand. *Id.* ¶¶ 2, 22. Plaintiffs purchased and used Electrolux dishwashers that, they claim, were "dangerously defective." *Id.* ¶ 2.

The defect, Plaintiffs allege, is in the electrical heating system, which heats the wash solution and dries the dishes. *Id.* ¶¶ 23, 27. Plaintiffs assert that the electrical system overheats, which can spark a fire or burn a hole through the bottom of the dishwasher's tub, causing water to leak and flood the floor below. *Id.* ¶ 27. This flooding also increases the risk of fire as water "comes into contact with exposed electrical components." *Id.* Plaintiffs allege that the defective heating element caused their dishwashers to ignite, causing smoke and fire damage, or to burn a hole through the bottom of the tub, leading to flooding and mold. *See, e.g.*, *id.* ¶¶ 44, 49, 53. These malfunctions occurred before the dishwashers reached their minimum life expectancies of nine to thirteen years. *Id.* ¶¶ 26, 43–44, 48–49, 52–53, 58, 63, 69, 73–74, 77–78, 82–83.

---

[1]     The following facts are taken from Plaintiffs' Consolidated Amended Complaint and are accepted as true on review of Electrolux's motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

According to Plaintiffs, Electrolux knew of this defect as early as 2007. *Id.* ¶ 32. By 2007, consumers were complaining of Electrolux dishwashers overheating within one to two years of purchase, leading to melted dishwashers, smoke, and fire. *Id.* Plaintiffs point to recalls issued by Electrolux in Australia in both 2007 and 2013 and in the United Kingdom in 2007 as additional evidence of Electrolux's knowledge of the risk of fire. *Id.* ¶ 33. Furthermore, Plaintiffs assert that Electrolux had notice of this defect through recalls issued by domestic competitors and through earlier subrogation claims filed against it. *Id.* ¶¶ 34–35.

Plaintiffs contend that, despite possessing this knowledge, Electrolux continued to sell dishwashers without disclosing the defect. *Id.* ¶ 39. In fact, Electrolux has continued to represent to consumers, like Plaintiffs, that the dishwashers and their features were safe for use, including a Delay Start feature that allows the owner to run the dishwasher while sleeping or away from home. *Id.* ¶¶ 25, 42. Plaintiffs claim that the defect is not reasonably discoverable, and consumers continue to purchase these dishwashers without knowledge of the defect. *Id.* ¶ 42. Making matters worse, some Plaintiffs allege that Electrolux refused to provide any relief after they informed Electrolux of the damage caused by the defect. *Id.* ¶¶ 46, 50, 57, 65, 71, 75, 80. In other cases, Electrolux's proposed solution required the consumer to incur a substantial cost, such as shipping the entire dishwasher to Electrolux or paying for a technician to visit the home. *Id.* ¶¶ 59, 66, 84. Plaintiffs allege that they would not have purchased these dishwashers or would have insisted on a lower price if they had been apprised of the defect. *Id.* ¶ 42. They further allege that, as consumers, they have relatively little bargaining power compared to Electrolux. *Id.* ¶ 103.

Based on these facts, Plaintiffs assert the following claims: breach of implied warranty of merchantability (Count I), strict liability based on design defect (Count II), strict liability based

on failure to warn (Count III), negligence (Count IV), negligent failure to warn (Count V), violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count VI), violation of the Illinois Uniform Deceptive Trade Practices Act (Count VII), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VIII), violation of the Washington Consumer Protection Act (Count IX), violation of the Washington Product Liability Act ("WPLA") (Counts X and XI), violation of the Indiana Product Liability Act ("IPLA") (Counts XII and XIII), violation of the Indiana Deceptive Consumer Sales Act ("IDCSA") (Count XIV), violation of the California Unfair Competition Law (Count XV), violation of the California Consumers Legal Remedies Act (Count XVI), breach of implied warranty under the California Song-Beverly Consumer Warranty Act ("SBA") (Count XVII), and fraudulent concealment (Count XVIII).[2]

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, a complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2). In reviewing a motion under Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true. *Christensen*, 483 F.3d at 457.

---

[2]     Originally, the Consolidated Amended Complaint also included three claims under Louisiana law (Counts XIX, XX, and XXI) brought by Plaintiffs Angelia East and Sarah LaVergne. Following the filing of Electrolux's motion to dismiss, however, Plaintiffs East and LaVergne voluntarily dismissed the Louisiana claims pursuant to Rule 41(a)(1)(A). The Court therefore need not address the Louisiana claims further.

In order to survive dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the standard of facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* At this stage, however, it is improper for a court to "decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## Analysis

### I.    Count I: Breach of Implied Warranty of Merchantability

Electrolux seeks to dismiss Count I, which encompasses all Plaintiffs' claims for breach of implied warranty of merchantability, through two different lines of reasoning. First, Electrolux argues that it expressly limited this warranty to one year, which dooms the claims of the Plaintiffs in California, Illinois, Indiana, Ohio, Pennsylvania, and Virginia because the alleged breaches occurred after the warranty had expired.[3] Second, Electrolux asserts that the implied warranty claim of the Washington Plaintiff is barred by the statute of limitations. For the following reasons, the motion to dismiss Count I is denied.

#### A.    Electrolux's One-Year Warranty Limitation

Electrolux first argues that Plaintiffs' claims for breach of implied warranty of merchantability in the states of California, Illinois, Indiana, Ohio, Pennsylvania, and Virginia fail

---

[3]    For reasons unclear from the parties' briefs, Electrolux specifically states that it relies upon this argument in moving to dismiss Count I with respect to the Washington Plaintiff. Def.'s Br. Supp. Mot. Dismiss at 4 n.6, ECF No. 95.

because Plaintiffs do not allege a breach within the warranty period as expressly modified by Electrolux. Def.'s Br. Supp. at 4–7. In support, Electrolux attaches the Use & Care Guides for the Plaintiffs' dishwashers to its motion to dismiss, pointing to provisions within the Use & Care Guides that it claims limited the warranty to one year. *Id.*, Exs. 3–11. Electrolux asks the Court to consider these attached exhibits on the ground that they are "integral to and referenced in Plaintiffs' Complaint," in light of Plaintiffs' allegation that "warranty forms" and other documents gave rise to privity between Plaintiffs and Electrolux. *Id.* at 6 n.8 (citing Am. Compl. ¶ 104). In response, Plaintiffs argue that these provisions are unconscionable under the relevant laws of each state and are therefore unenforceable. Pls.' Br. Opp'n Mot. Dismiss at 4–6, ECF No. 103.

When reviewing a motion to dismiss, the Court can consider documents attached to the motion only if they "are referred to in the plaintiff's complaint and are central to his claim." *McGready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). If the documents do not meet these two conditions, the Court is "limited to the factual allegations contained within the four corners of the complaint," along with any exhibits the plaintiff attached thereto. *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917 (N.D. Ill. 2007) (quoting *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1236 (N.D. Ill. 2005)); *accord Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). In addition, it is improper for the Court to consider documents submitted by the defendant if discovery is required to "authenticate or disambiguate" them or show whether they are complete. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002); *Flentye*, 485 F. Supp. 2d at 917. Furthermore, if the factual content of the attachments concerns an affirmative defense rather than the elements of plaintiff's claims, the documents are likely outside the scope of the Court's inquiry at the

pleading stage.  *See, e.g.*, *Seban v. Cargurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *2 (N.D. Ill. Sept. 8, 2016) (citing *Geinosky*, 675 F.3d at 745 n.1; *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Hepp v. Ultra Green Energy Servs. LLC*, No. 13 C 4692, 2014 WL 2154097, at *3 n.4 (N.D. Ill. May 22, 2014)).

Despite Electrolux's insistence, the Use & Care Guides do not satisfy the two requirements to be considered at this stage.  First, the paragraph of the Consolidated Amended Complaint that supposedly shows that Plaintiffs invoked the Use & Care Guides refers to these documents only obliquely, if at all.  *See* Am. Compl. ¶ 104.  While Plaintiffs acknowledge the existence of "warranty forms," they do not indicate what these forms articulated, how many exist, or whether these "warranty forms" include the Use & Care Guides proffered by Electrolux. *Id.*  Due to this ambiguity, it is not clear that the exhibits comprise the documents contemplated by Plaintiffs, making their consideration in ruling on this motion improper.  *See Flentye*, 485 F. Supp. 2d at 917.  In addition, given that the documents were not attached by Plaintiffs to the complaint, discovery may be necessary to authenticate them.  *See Tierney*, 304 F.3d at 739.

Second, the exhibits are not central to Plaintiffs' complaint.  Rather, the Use & Care Guides are central to an affirmative defense raised by Electrolux, "which is better left for resolution at the summary judgment stage."  *Seban*, 2016 WL 4709077, at *2.  The purported centrality of these documents is belied by the coherence and plausibility of Plaintiffs' claims in their absence.  Accordingly, the Court's analysis must be confined to the complaint, which makes no mention of Electrolux's modifications to the warranties.  *McGready*, 453 F.3d at 891. Divorced from the attachments Electrolux included with the motion to dismiss, the argument that the warranty provisions in the Use & Care Guides render Plaintiffs' claims untimely fails.

7

Moreover, even if the attached exhibits were included in the consideration of this motion, Count I would still survive because the alleged unconscionability of the warranty provisions in the Use & Care Guides involves a disputed issue of fact that cannot be resolved at this stage. It is well established that issues of unconscionability typically involve factual inquiries that cannot be decided on a motion to dismiss. *See In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 794–95 (N.D. Ill. 2016) (collecting cases). Here, it is enough that Plaintiffs raise the issue of unconscionability in the complaint, alleging a disparity in bargaining power and Electrolux's knowledge of an undetectable defect. Am. Compl. ¶¶ 32, 103. Factual disputes exist concerning whether this disparity rises to the level of procedural or substantive unconscionability, making dismissal improper at this stage. *See Rust-Oleum*, 155 F. Supp. 3d at 795 (denying motion to dismiss warranty claim where plaintiffs' complaint alleged unconscionability of contract provision that purported to limit the claim).

For these reasons, the motion to dismiss Count I with regard to the Plaintiffs from California, Illinois, Indiana, Ohio, Pennsylvania, and Virginia is denied.

## B.     Washington State Law Statute of Limitations

In moving to dismiss Count I with respect to the Washington Plaintiff, Leasa Brittenham ("Brittenham"), Electrolux argues that Brittenham's claim is barred by Washington's four-year statute of limitations. Def.'s Br. Supp. at 13. Specifically, Electrolux contends that Brittenham purchased her dishwasher on December 31, 2010, at the latest and filed her suit on June 28, 2016[4]—one and a half years after the statute of limitations had expired—and that her claim

---

[4]     Brittenham originally filed her claim in Washington state court on June 28, 2016. Her case was later removed to the United States District Court for the Western District of Washington. *See Brittenham v. Electrolux Home Prods., Inc.*, No. 2:16-cv-01182-RSL (W.D. Wash.); *see also* Def.'s Reply Br. at 14–15, ECF No. 106. She voluntarily dismissed the case after this Court granted Plaintiffs' motion to file a consolidated amended complaint that, among other things, included Brittenham's claims. Plaintiffs' Consolidated Amended Complaint was filed before this Court on December 12, 2016.

should accordingly be dismissed. *Id.* at 14 (citing Am. Compl. ¶ 52). For her part, Brittenham argues that the claim is tolled by the doctrine of fraudulent concealment. In support, she cites allegations regarding Electrolux's concealment of the defect and knowledge of its consumers' ignorance of the defect. Pls.' Br. at 12–13 (citing Am. Compl. ¶¶ 39–42, 95–97, 300–09).

Washington law imposes a four-year statute of limitations on any claims for breach of a sale contract, including claims for breach of an implied warranty of merchantability. Wash. Rev. Code Ann. § 62A.2-725(1). A cause of action for a claim of breach of implied warranty accrues when the breach occurs, which is "when tender of delivery is made." *Id.* § 62A.2-725(2); *see Kittitas Reclamation Dist. v. Spider Staging Corp.*, 27 P.3d 645, 647 (Wash. Ct. App. 2001); *see also W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1549 (9th Cir. 1994) (applying Wash. Rev. Code Ann. § 62A.2-725(2)). Washington courts have found that this statute "imposes no [ ] limitation on the doctrine of fraudulent concealment," which operates to toll the statute of limitations. *Giraud v. Quincy Farm & Chem.*, 6 P.3d 104, 111 (Wash. Ct. App. 2000).

In general, courts do not dismiss claims under Rule 12(b)(6) for failure to be brought within the statute of limitations, because the statute of limitations is an affirmative defense. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (citing *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). Dismissal based upon affirmative defenses is rare because "these defenses typically turn on facts not before the court at [this] stage." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). For dismissal to be granted, "the allegations of the complaint itself [must] set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design*, 770 F.3d at 613–14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If there is "*any* set of facts that if

proven would establish a defense to the statute of limitations," then a motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

Here, Brittenham has pleaded a set of facts that may establish the tolling of the statute of limitations through the doctrine of fraudulent concealment, allowing the claim to survive even if it was brought over four years after delivery was made. The complaint alleges that Electrolux "continuously failed to disclose" a defect that Electrolux knew existed and knew was "not reasonably discoverable" by a purchaser. Am. Compl. ¶¶ 39–42. These allegations provide Brittenham a set of facts sufficient to overcome a statute of limitations defense, at least at this stage. *See Clark*, 318 F.3d at 768 (reversing dismissal because complaint provided for the "possibility" that the statute of limitations defense could be defeated); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) (reversing dismissal because complaint was "reasonably clear" in alleging set of facts that would overcome an affirmative defense). Therefore, Electrolux's motion to dismiss Brittenham's claim for breach of the implied warranty of merchantability is denied.

## II.     Counts X and XI: Claims Under the WPLA

Continuing its effort to dismiss claims for untimeliness, Electrolux moves to dismiss Counts X and XI, the two WPLA causes of action, as barred by the WPLA's three-year statute of limitations. Def.'s. Br. Supp. at 13. Electrolux argues that the statute of limitations began to run when Brittenham's dishwasher caught fire in April 2013, three years and two months before her claims were originally filed on June 28, 2016. *Id.* In response, Brittenham argues that the

WPLA's discovery rule delayed the start of the statute of limitations until the defect was discovered, which she claims occurred within the three-year window. Pls.' Br. at 11–12.[5]

Claims brought under the WPLA are governed by a three-year statute of limitations subject to a discovery rule. Wash. Rev. Code Ann. § 7.72.060(3). This three-year period begins when the "claimant discovered or in the exercise of due diligence should have discovered the harm *and* its cause." *Id.* (emphasis added). Washington courts have interpreted this statute to mean that the limitations period begins when the plaintiff discovers or should have discovered "a factual causal relationship of the product to the harm." *La.-Pac. Corp. v. ASARCO Inc.*, 24 F.3d 1656, 1580 (9th Cir. 1994) (quoting *N. Coast Air Servs., Ltd. v. Grumman Corp.*, 759 P.2d 405, 407 (Wash. 1988)). This "causal relationship" is not discovered simply upon the discovery of damage; rather, "a cause of action does not accrue until [the plaintiff] knew or should have known the essential elements of the cause of action—duty, breach, causation, and damages." *Green v. A.P.C. (Am. Pharm. Co.)*, 960 P.2d 912, 915 (Wash. 1998). The statute of limitations can nevertheless start before the plaintiff is personally aware of a possible cause of action if the plaintiff failed to "exercise due diligence in discovering the harm and its cause." *N. Coast*, 759 P.2d at 411.

Determining when discovery triggered the running of the statute of limitations is "ordinarily a question of fact." *Green*, 960 P.2d at 918. A disputed discovery time, therefore, presents a question of fact that federal courts have held is improper for resolution at the pleading stage. *See, e.g.*, *McFarland v. APP Pharm., LLC*, 2011 WL 2413797, at *4 (W.D. Wash. June 13, 2011) (declining to find WPLA claims time-barred at motion to dismiss stage because there

---

[5] Brittenham also argues that her claims relate back to Plaintiffs' motion to file the first consolidated complaint in this case, which named Brittenham as a plaintiff and was filed on March 23, 2016. Pls.' Br. at 10–11. Resolution of this issue, however, is unnecessary at this time.

was no evidence from which the court could determine whether plaintiff's claims were time-barred); *see also Clark*, 318 F.3d at 768.

Here, the parties dispute when Brittenham discovered the cause of action, presenting a disputed issue of fact and precluding dismissal based on a statute of limitations defense at the pleading stage. Electrolux asserts that Brittenham discovered the cause of action when the fire occurred in April 2013, Def.'s Br. Supp. at 13, while Brittenham maintains that she did not learn of the fire's origins until encountering the fire investigator's report at an unspecified time after June 28, 2013, Pls.' Br. at 12 (citing Am. Compl. ¶ 54). This factual dispute cannot be resolved based on the pleadings, and the claim therefore must be allowed to proceed to discovery. Furthermore, the complaint does not specify when the fire inspector gave Brittenham the report, and discovery may reveal that this occurred after June 28, 2013. *See* Am. Compl. ¶ 54. There thus is a "conceivable set of facts" with which Brittenham can overcome the statute of limitations defense. *Clark*, 318 F.3d at 768. Electrolux's motion to dismiss Counts X and XI is denied.

## III. Counts XII and XIII: Claims under the IPLA

Next, Electrolux moves to dismiss the IPLA claims brought by the Indiana Plaintiffs, Kathy and Nathaniel Beck ("the Becks"), in Counts XII and XIII as time-barred by the IPLA's statute of limitations. Def.'s Br. Supp. at 9. The Becks provide three counterarguments: (1) Electrolux misinterprets the statute of limitations under the IPLA; (2) the statute of limitations is subject to tolling via the discovery rule; (3) the statute of limitations is subject to tolling or equitable estoppel due to Electrolux's fraudulent concealment. Pls.' Br. at 7. Without addressing the first argument, the Court concludes that the Becks' claims survive Electrolux's motion to dismiss because their second and third arguments present disputed issues that require factual inquiry to resolve.

## A.    Tolling Under the Discovery Rule

The parties dispute when the Becks discovered their cause of action and thus triggered the start of the two-year statute of limitations.[6] Electrolux claims that the Becks admit to discovering the cause of action at the time of their injury in August 2012, Def.'s Br. Supp. at 9 (citing Am. Compl. ¶ 58), while the Becks claim that their discovery was delayed because they did not know and could not have known at that time that their injury was caused by the defect, Pls.' Br. at 7 (citing Am. Compl. ¶¶ 29–35, 39–42).

An Indiana tort action does not accrue for statute of limitations purposes until it has been discovered, which occurs when the plaintiff knew, or should have known through the exercise of due diligence, that "an injury ha[s] been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 842 (Ind. 1992); *see also Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995) (recognizing that *Wehling* applied the discovery rule to all Indiana tort claims). Ascertaining when an action accrues is a factual inquiry that is generally suitable for resolution only at summary judgment or trial. *See Horn*, 50 F.3d at 1370. For this reason, as explained above, dismissal of a claim based on a statute of limitations defense is proper only when "the allegations of the complaint itself set forth everything necessary" to establish the defense. *Lewis*, 411 F.3d at 842.

---

[6]    For purposes of addressing the parties' arguments, the Court assumes without deciding that the two-year statute of limitations applies. The Court acknowledges the Becks' argument that the statute of limitations should be interpreted to set forth a limitations period of ten years. *See* Ind. Code Ann. § 34-20-3-1(b) (providing that the limitations period expires "(1) within two [ ] years after the cause of action accrues; or (2) within ten [ ] years after the delivery of the product to the initial user or consumer"); *see also Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 210 (Ind. 1981) (interpreting "or" in an earlier codification of this statute to sometimes mean "and"). Even assuming *arguendo* that the limitations period is only two years, however, dismissal of the Becks' IPLA claims is unwarranted for the reasons explained below. The Court therefore need not reach this interpretive issue at this stage.

Fortunately for the Becks, they have not pleaded a set of facts that establishes Electrolux's statute of limitations defense. While the complaint describes the injury that they sustained, it does not indicate, as Electrolux claims, that the Becks recognized an actionable tort at the moment of their injury. Am. Compl. ¶ 58. Electrolux encourages the Court to infer otherwise, but that is impermissible at the pleading stage. Discovery is needed to develop evidence that can resolve when the Becks discovered their claims, and the Court accordingly denies Electrolux's motion to dismiss the IPLA claims in Counts XII and XIII.

### B. Tolling or Equitable Estoppel Due to Fraudulent Concealment

Even if the discovery rule could not apply, the Court would still deny Electrolux's motion to dismiss the IPLA claims, because the limitations period may have been tolled by the doctrine of fraudulent concealment. In particular, the Becks claim that Electrolux actively concealed their dishwasher's defect, entitling the Becks to tolling or estopping of the statute of limitations based on Electrolux's fraudulent concealment. Pls.' Br. at 7 (citing Am. Compl. ¶¶ 95–98). Electrolux contends that this argument is insufficiently supported because it is based on allegations of mere passive silence, not active misrepresentation. Def.'s Reply Br. at 6–8.

Under Indiana law, the doctrine of fraudulent concealment can toll a statute of limitations or delay the start of the limitations period[7] when the defendant has committed "concealment or fraud of such character as to prevent inquiry, [to] elude investigation, or to mislead the plaintiff."

___

[7]     Indiana law appears to allow plaintiffs to use the doctrine of fraudulent concealment both to toll a statute of limitations and to estop a defendant from relying upon the statute of limitations defense, but the parties' briefs leave it unclear what doctrinal differences, if any, there are between such tolling and estoppel. *Compare, e.g.*, Ind. Code Ann. § 34-11-5-1 ("If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action."), *with City of East Chi. v. East Chi. Second Century, Inc.*, 908 N.E.2d 611, 621–22 (Ind. 2009) (treating the doctrine of fraudulent concealment as an estoppel doctrine rather than a tolling doctrine, and noting that "[t]his doctrine does not establish a new date for the running of the statute, but rather works an equitable exception"). For purposes of this motion, however, it is immaterial whether tolling or estoppel is being sought, and any doctrinal nuances in this area need not be discussed further.

*Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citing *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 748 (Ind. 1999)). While the defendant's passive silence is insufficient to merit applying the doctrine, *Forth v. Forth*, 409 N.E.2d 641, 644 (Ind. Ct. App. 1980), it is enough for the defendant to actively or intentionally "mislead the party who claims the cause of action," *Cwiakala v. Economy Autos, Ltd.*, 587 F. Supp. 1462, 1466 (N.D. Ind. 1984) (emphasis omitted) (quoting *Marcum v. Richmond Auto Parts Co.*, 270 N.E.2d 884, 886 (Ind. Ct. App. 1971)).

By alleging that Electrolux committed affirmative acts to conceal the defect, the Becks have provided a conceivable set of facts to support the application of the doctrine of fraudulent concealment and overcome Electrolux's statute of limitations defense for pleading purposes. The Becks state that Electrolux had knowledge of the defect as early as 2007, yet continued to sell dishwashers that it represented to be safe enough to run while the owners were away or sleeping. Am. Compl. ¶¶ 29–35, 39–42. In sum, the Becks assert that Electrolux did not just fail to disclose the defect, but actively misled them into believing that the dishwasher would clean dishes without overheating or catching fire. Determining whether this assertion has merit requires additional fact-finding not available at the pleading stage. For this additional reason, the motion to dismiss Counts XII and XIII is denied.

## IV.    Count XIV: Claim Under the IDCSA

Electrolux makes three arguments in support of its motion to dismiss Count XIV, the Becks' claim under the IDCSA. First, Electrolux asserts that the claim is abrogated by the IPLA. Def.'s Br. Supp. at 8. Second, Electrolux argues that the claim is barred by the IDCSA's two-year statute of limitations. *Id.* at 9. Third, Electrolux contends that the Becks fail to adequately allege an act of deception or misrepresentation in connection with the purchase of their dishwasher. *Id.* at 10. For the reasons explained below, none of these arguments is availing.

## A.    Abrogation by the IPLA

Electrolux argues that the IPLA abrogates the Becks' IDCSA claim because the "gravamen" of their claim is that their dishwasher caused physical harm, which is actionable exclusively under the IPLA.[8]  *Id.* at 8.  The IPLA governs all actions brought for "physical harm caused by a product[,] regardless of the substantive legal theory or theories upon which the action is brought."  Ind. Code Ann. § 34-20-1-1.  By contrast, the IDCSA prohibits suppliers from "commit[ting] an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."  Ind. Code Ann. § 24-5-0.5-3(a).  Electrolux characterizes the Becks' suit as a "paradigmatic product liability case," which the Supreme Court of Indiana has made clear is governed by the IPLA.  Def's. Br. Supp. at 8 (citing *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002)).

In making their IDCSA claim, however, the Becks allege various deceptive sales practices utilized by Electrolux, including hiding the defect, intentionally concealing the safety risks of the dishwasher, and intentionally misrepresenting that the dishwashers were safe for use while consumers were asleep or away from the home.  Am. Compl. ¶¶ 261–66.  The Becks further allege that they would not have purchased their dishwasher, or at least not at full price, if the defect had not been concealed.  *Id.* ¶ 42.  Contrary to Electrolux's assertions, these are allegations of deceptive trade practices, not merely of physical damage sustained through faulty products.  Indeed, in similar factual circumstances, other district courts have considered IPLA and IDCSA claims as distinct causes of action at the motion to dismiss stage.  *See Hoffman v. Abbott Labs., Inc.*, No. 01-c-1313, 2001 WL 1558299, at *3–5 (N.D. Ill. Dec. 5, 2001)

---

[8]    Electrolux also argues that the Becks have conceded this argument by failing to address it in their response brief.  The Court disagrees.  Although perhaps not a paragon of clarity, Plaintiffs' brief appears to argue that the Becks properly pleaded an IDCSA claim so as to avoid the issue of abrogation.  *See* Pls.' Br. at 6–8.

(considering strict product liability claim under the IPLA as distinct from claims related to deceptive sales tactics under the IDCSA); *see also Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 869–75 (D. Minn. 2012) (same).[9]  While claims based solely on physical harm caused by a product must be brought under the IPLA, *see Stegemoller*, 767 N.E.2d at 975, the Becks' cause of action is based on deceptive sales practices, which is properly governed by the IDCSA. Electrolux's argument would have the IPLA swallow the IDCSA, an incoherence not supported by the weight of authority.

### B.     Statute of Limitations

Electrolux next seeks to dismiss the Becks' IDCSA claim for being brought after the two-year statute of limitations had expired.  Def.'s Br. Supp. at 9.  In response, the Becks contend that the statute of limitations has been tolled or estopped by Electrolux's alleged fraudulent concealment.  Pls.' Br. at 7 (citing Am. Compl. ¶¶ 95–98).

Unlike the IPLA, the IDCSA statute of limitations is governed by an "occurrence" rule. Ind. Code Ann. § 24-5-0.5-5(b).  Under the occurrence rule, the IDCSA's two-year statute of limitations is "triggered by the date of each occurrence" of a deceptive act.  *State v. Classic Pool & Patio, Inc.*, 777 N.E.2d 1162, 1166 (Ind. Ct. App. 2002).  This occurrence may be at the actual sale, giving the purchaser two years from the date of the sale, but the occurrence can also precede the sale, such as when the deception occurs during the solicitation of the sale.  *See id.* As mentioned above, under Indiana law, the doctrine of fraudulent concealment can toll the statute of limitations when the defendant has committed concealment or fraud "of such character

---

[9]      In support of its position, Electrolux cites one case where the Indiana Court of Appeals observed that the trial court "merged" an IPLA claim with an IDCSA claim.  *McGookin v. Guidant Corp.*, 942 N.E.2d 831, 834 (Ind. Ct. App. 2011).  Electrolux's reliance on *McGookin* is unpersuasive, however, because the case provides no explanation for why these claims were combined, instead merely noting the fact of their combination in the course of recounting the case's procedural history.  *See id.*

as to prevent inquiry, [to] elude investigation, or to mislead the plaintiff," *Logan*, 644 F.3d at 582, such as by concealing material facts so as to "prevent[ ] the plaintiff from discovering a potential cause of action," *Shults-Lewis*, 718 N.E.2d at 745 (quoting *Fager v. Hundt*, 610 N.E.2d 246, 251 (Ind. 1993)).

Wielding an affirmative defense, Electrolux is tasked yet again with supporting its argument entirely with Plaintiffs' own allegations, *Lewis*, 411 F.3d at 842, and hoping those allegations do not leave "*any* set of facts" that can defeat the defense, *Clark*, 318 F.3d at 768. Yet again, the complaint is adequate to survive a motion to dismiss. The Becks state that Electrolux misled them into purchasing a dishwasher that was purported to be safe to run, including when owners were sleeping or away from home, despite knowing that the dishwasher possessed a hidden electrical defect that could cause fire and flooding. Am. Compl. ¶¶ 25, 27–28, 32, 263–68. Electrolux's alleged multiyear concealment of the defect could plausibly have prevented the Becks from discovering their cause of action. Further factual development may show that tolling is not warranted in this case, but the Court cannot rule definitively on the matter at this time. *See, e.g.*, *Big Moose Holdings, Inc. v. Interstate Motor Carrier, Inc.*, 2002 WL 485644, at *2 (S.D. Ind. Mar. 29, 2002) (denying dismissal of Indiana tort claims as time-barred because plaintiff's complaint had not foreclosed the possibility of tolling the statute of limitations); *cf. Cwiakala*, 587 F. Supp. at 1466 (denying summary judgment on IDCSA claim because of factual disputes regarding whether the alleged fraudulent act did actually "mislead, hinder, [or] prevent inquiry" so as to toll the statute of limitations).

### C. Failure to Plead an Act of Deception or Misrepresentation

The third argument Electrolux offers to dismiss the Becks' IDCSA claim is that the Becks fail to plead "any deceptive act or misrepresentation made to them in connection with the purchase of their Dishwasher." Def.'s Br. Supp. at 10. As noted above, the IDCSA prohibits

suppliers from "commit[ting] an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code Ann. § 24-5-0.5-3(a). The acts, omissions, and practices prohibited under the IDCSA include both "implicit and explicit misrepresentations." *Id.* Moreover, the IDCSA is to "be liberally construed and applied to promote its purposes and policies." *Id.* § 24-5-0.5-1. To be actionable under the IDCSA, a deceptive act must be "uncured" or "incurable." *Castagna v. Newmar Corp.*, No. 3:15-CV-249-TLS, 2016 WL 3413770, at *7 (N.D. Ind. June 22, 2016) (citing *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 647 (Ind. Ct. App. 2004)). The Becks have alleged an incurable deceptive act, Am. Compl. ¶ 273, which requires them to show that Electrolux intended to defraud them, Ind. Code Ann. § 24-5-0.5-2(a)(8); *see Castagna*, 2016 WL 3413770, at *7 (citing *McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980)).

The Becks' allegations are sufficient to state an IDCSA claim based on an incurable deceptive act. Specifically, the Becks allege that Electrolux had knowledge of the defect in its dishwashers by virtue of the recalls it issued abroad, subrogation claims arising from dishwasher fires, and consumer complaints. Am. Compl. ¶¶ 28, 32–33, 35. Possessing that knowledge, Electrolux elected not to conduct a recall in the United States, not to disclose the defect to buyers, and to represent that its dishwashers were safe for use while the owners slept or were away from home. *Id.* ¶¶ 260–61, 264, 267. Relying upon Electrolux's alleged intentional misrepresentation, the Becks bought a dishwasher they would not otherwise have purchased, at least not at full price. *Id.* ¶¶ 60, 263, 271. By pleading facts about Electrolux's conduct that could constitute a deceptive, intentional omission, and given the IDCSA's directive to liberally construe its terms, the Becks have stated a cognizable claim under the IDCSA. *See Castagna*, 2016 WL 3413770, at *8 (denying dismissal of an IDCSA claim for failing to allege a deceptive

act because plaintiff's complaint specifically alleged that the plaintiff relied on representations that concealed a defect in the purchased RV). For all of these reasons, Electrolux's motion to dismiss Count XIV is denied.

## V. Count XVII: SBA Claim

Electrolux seeks to dismiss the California Plaintiffs' SBA claim for failure to allege a breach of implied warranty that occurred inside the one-year warranty period. Def.'s Br. Supp. at 4, 7 & n.9.[10] The SBA provides an implied warranty of merchantability to every sale of consumer goods at retail in California from the manufacturer and retailer. Cal. Civ. Code § 1792.[11] The SBA provides a maximum length of one year for this implied warranty. *Id.* § 1791.1(c). Under California law, a latent defect can breach the implied warranty of merchantability at the time of sale even if the defect is not discovered until after the warranty has expired. *Mexia*, 174 Cal. App. 4th at 1304–05. The warranty is breached "by the existence of the unseen defect, not by its subsequent discovery." *Id.* at 1305. The defect must be severe enough "to cause the product to fall below the 'minimum level of quality' guaranteed by the

---

[10]     To the extent Electrolux bases this argument upon the one-year warranty period provided in its Use & Care Guides, the Court rejects this argument for the same reasons it rejected it *supra* with respect to Plaintiffs' claims for breach of the implied warranty of merchantability in Count I. The SBA, however, separately provides its own statutory implied warranty period, which can last for up to one year. Cal. Civ. Code § 1791.1(c); *see also* Def.'s Br. at 5, 7 (citing authorities taking note of the SBA's one-year statutory warranty period). Thus, for the sake of completeness, the Court addresses Electrolux's arguments regarding the California Plaintiffs' SBA claim separately from its arguments regarding Count I.

[11]     California courts have observed that the SBA provides consumers with additional protections and remedies beyond those provided by the UCC. *See, e.g.*, *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303–04 (Cal. Ct. App. 2009). Accordingly, the California Plaintiffs' claim for breach of implied warranty of merchantability under the SBA is separate from their claim for breach of implied warranty of merchantability in Count I, the latter of which, at least as Electrolux has construed it, *see* Def.'s Br. Supp. at 4–5, proceeds under California's codification of the UCC, *see Gonzalez v. Mazda Motor Corp.*, No. 16-cv-02087-MMC, 2017 WL 345878, at *2–3 (N.D. Cal. Jan. 5 2017) (treating implied warranty claim brought under the SBA separately from claim brought under the UCC); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1097–98, 1100 (S.D. Cal. 2010) (same).

warranty." *Parenteau v. Gen. Motors, LLC*, No. CV 14-04961-RGK, 2015 WL 1020499, at *1, 10–11 (C.D. Cal. Mar. 5, 2015) (holding that car with an alleged "catastrophic engine failure" fell below the minimum level of quality and thus survived a motion to dismiss). For a latent defect claim under the SBA to survive a motion to dismiss, the plaintiff must plausibly allege that the defect existed at the time of purchase. *Id.* at *11. The question of whether the defect actually existed at the time of sale "must be answered at a later stage in the proceedings." *Id.* (citing *Mexia*, 174 Cal. App. 4th at 1308).

Here, contrary to Electrolux's assertions, Plaintiffs' factual allegations pass this bar. The complaint does not merely state that the dishwashers were sold with a latent defect. Rather, the complaint specifies that the dishwashers were sold with a latent defect in the electrical system and explains how this defect can result in injuries like Plaintiffs'. Am. Compl. ¶¶ 27, 36–37. These allegations are further supported by a collection of consumer complaints documenting the same types of problems and injuries that Plaintiffs allege. *Id.* ¶¶ 28, 32. Additionally, Plaintiffs allege that Electrolux recalled dishwashers abroad because of the fire risk the dishwashers posed, buttressing their claim that the dishwashers did, in fact, have a latent manufacturing defect. *Id.* ¶ 33. By couching their allegations in this context, the Plaintiffs have more than sufficiently supported their assertion that there was a latent defect in the dishwashers at the time of sale. *See Parenteau*, 2015 WL 1020499, at *10–12 (denying motion to dismiss claim for breach of implied warranty under SBA where complaint plausibly alleged that a latent defect existed at the time of sale). Electrolux's motion to dismiss Count XVII is denied.

## VI.    Count XVIII: Fraudulent Concealment Claims Under Indiana and Ohio Law

Finally, Electrolux seeks to dismiss the fraudulent concealment claims raised in Count XVIII by the Plaintiffs in the states of Indiana and Ohio. The claim in each state, Electrolux

argues, has been preempted by state statute. Def.'s Br. Supp. at 8, 12–13. For the following reasons, the motion to dismiss the Indiana and Ohio fraudulent concealment claims is denied.

A.      **Fraudulent Concealment Claim in Indiana**

Electrolux argues that the Indiana fraudulent concealment claim is actually a product liability claim abrogated by the IPLA because the "gravamen" of the claim is physical harm caused by a product. Def.'s Br. Supp. at 8.[12]    As mentioned above, the IPLA governs "all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory upon which the action is brought." Ind. Code Ann. § 34-20-1-1. The Supreme Court of Indiana has determined that the IPLA was "intended [to] govern all product liability actions, whether the theory of liability is negligence or strict liability in tort." *Stegemoller*, 767 N.E.2d at 975 (quoting *Dague*, 418 N.E.2d at 212); *see also Butler v. City of Peru*, 733 N.E.2d 912, 918 & n.2 (Ind. 2000).

Contrary to Electrolux's assertions, however, the "gravamen" of the Indiana Plaintiffs' fraudulent concealment claim is not product liability, but fraud. Specifically, as with their IDCSA claim, discussed *supra*, the Becks assert that Electrolux's fraudulent misrepresentations led them to make a purchase they would not otherwise have made, at least at the price they paid. Am. Compl. ¶¶ 41–42. Thus, for the same reason that the IPLA does not abrogate the Becks'

---

[12]      Electrolux again argues that Plaintiffs have conceded this argument by failing to address it in their response brief. Again, however, the Court disagrees, because Plaintiffs' brief appears to argue that the Indiana fraudulent concealment claim is properly pleaded so as to avoid abrogation. *See* Pls.' Br. at 6–8.

IDCSA claim, it does not abrogate their fraudulent concealment claim.  Electrolux's motion to dismiss this claim is accordingly denied.[13]

## B.    Fraudulent Concealment Claim in Ohio

Electrolux offers a virtually identical argument to dismiss the Ohio Plaintiffs' fraudulent concealment claim, contending that it is abrogated by the Ohio Product Liability Act (OPLA).  In support, Electrolux describes Plaintiffs' claim as "an attempt to restate a failure to warn claim under the OPLA."  Def.'s Br. Supp. at 13.

The OPLA is "intended to abrogate all common law product liability claims or causes of action," Ohio Rev. Code Ann. § 2307.71(B), including causes of action based on a failure to warn, *see id.* § 2307.76.  In ascertaining whether a claim is abrogated by the OPLA, courts have differentiated claims based on the defendant's negligent failure to warn from those based on the defendant's general duty not to deceive, holding that only the former are abrogated by the OPLA.  *See Hogue v. Pfizer, Inc.*, 893 F. Supp. 2d 914, 918 (S.D. Ohio 2012) ("[T]he OPLA does not abrogate fraud claims which are based on a general duty not to actively deceive; however, the OPLA does abrogate fraud claims arising from a duty to warn."); *see Meta v. Target Corp.*, No. 4:14 CV 0832, 2015 WL 10990180, at *1 (N.D. Ohio Mar. 23, 2015)

---

[13]    In support of its argument that the IPLA governs not only product liability actions but also fraud actions, Electrolux cites *Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, No. 1:05 CV 162, 2006 WL 449207 (N.D. Ind. Feb. 22, 2006), in which a district court held that the IPLA abrogated a consumer's fraud claim.  *See id.* at *3.  Electrolux also points to two other district courts that have cited *Ryan* for this holding.  *See In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2577, 2015 WL 6467730, at *21 (D. N.J. Oct. 26, 2015); *Gore v. Stryker Corp.*, No. 3:10-cv-00137-RLY-WGH, slip op. at 2 (S.D. Ind. Jan. 20, 2011).  In *Ryan*, however, the plaintiff's fraud claim arose from the defendant's alleged failure to disclose to the plaintiff's husband the risks of physical harm associated with cigarette smoking, and she sought damages arising from his death.  *See Ryan*, 2006 WL 449207, at *2.  By contrast, in support of their fraudulent concealment claim, the Becks do not merely allege a failure to warn that caused physical harm; rather, they also assert that they would not have purchased Electrolux's dishwasher if not for Electrolux's intentional concealment of a defect or, if they had, they would have paid a much lower price.  Am. Compl. ¶ 42.  As such, *Ryan* is distinguishable from the present case.

(determining that more persuasive authorities hold that the OPLA abrogates claims based on failure to warn, but not claims based on the general duty not to deceive); *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *8 (S.D. Ohio June 17, 2008) ("[C]laims of active misrepresentation are not necessarily abrogated by the OPLA because they may implicate the more general duty not to deceive, rather than the duty to warn." (citing *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343 (6th Cir. 2000))).  In turn, courts have held that claims involving fraudulent concealment or misrepresentation may be based upon the general duty not to deceive.  *See Glassner*, 223 F.3d at 349; *Stratford*, 2008 WL 2491965, at *8.

The Ohio Plaintiffs assert that Electrolux deceived them by concealing a hidden danger in the dishwashers while representing their safety.  Plaintiffs allege that they "expected the dishwashers to clean dishes during their effective life use without catching fire."  Am. Compl. ¶ 40.  They further state that Electrolux knew a defect existed and knew that Plaintiffs were ignorant of the defect, but still sold the defective dishwashers while continuing to represent that the dishwashers were safe for use.  *Id.* ¶¶ 25, 301–04.  Drawing reasonable inferences in Plaintiffs' favor, these allegations accuse Electrolux of engaging in deceptive acts in violation of Electrolux's general duty not to deceive.  The Ohio Plaintiffs' fraudulent concealment claim thus is not abrogated by the OPLA.  *See, e.g.*, *Hogue*, 893 F. Supp. 2d at 918; *Meta*, 2015 WL 10990180, at *1.  Accordingly, the motion to dismiss the Ohio Plaintiffs' fraudulent concealment claim is denied.

## Conclusion

For the foregoing reasons, the Court denies Electrolux's motion to partially dismiss the Consolidated Amended Complaint [94].

**IT IS SO ORDERED.**                    **ENTERED: 8/28/17**

_____
**John Z. Lee**
**United States District Judge**